WASHINGTON SERVICE CON-
TRACTORS COALITION, et
al., Appellees,

v.

DISTRICT OF COLUMBIA, et al., and Service Employees International Union and Service Employees International Union, Local 82, Appellants.

Nos. 94–7143, 94–7144.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 27, 1995.

Decided May 12, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 9, 1995.*

---

* Sentelle, Circuit Judge, would grant the petition for rehearing and the suggestion for rehearing in banc.

Marsha S. Berzon, Ithaca, NY, argued the cause, for appellants. With her on the briefs were Garland Pinkston, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Orrin Baird and Carol R. Golubock, Washington, DC.

Anita Barondes, Washington, DC, argued the cause, for appellees. With her on the brief were Peter Chatilovicz and Ronald A. Lindsay, Washington, DC.

Before WALD, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Dissenting opinion filed by Circuit Judge SENTELLE.

WALD, Circuit Judge:

The District of Columbia Displaced Workers Protection Act of 1994, 41 D.C.Reg. 1011 (to be codified at D.C.Code Ann. §§ 36–1501 to 1503) ("DWPA" or "Act"), requires that contractors who take over contracts for the provision of certain services must hire their predecessors' employees for a period of 90 days. Appellees, a coalition of service contractors and eight individual companies (collectively "the contractors"), brought suit in the district court alleging that the DWPA is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151–69 (1988) ("NLRA"), and violates the mandate of the Contracts Clause. U.S. CONST. art. I, § 10, cl. 1. The district court agreed that the NLRA preempts the DWPA and enjoined the Act's enforcement without addressing the Contracts Clause issue. The District of Columbia and its mayor ("the District") and the Service Employees International Union and its local branch ("SEIU") appeal. Because we hold that the DWPA is neither preempted by the NLRA nor invalid under the Contracts Clause, we vacate the district court's decision and remand for proceedings consistent with this opinion.

## I. BACKGROUND

### A. The DWPA

The DWPA was enacted by the Council of the District of Columbia and approved by Mayor Sharon Pratt Kelly on February 17, 1994. Following a period of congressional review, it became law on April 26, 1994. According to the District, the DWPA represents "an effort ... to provide a measure of employment security to certain low wage service workers who are frequently displaced from their employment when their employers lose contracts," and to "reduc[e][ ] the number of unemployed D.C. residents currently

collecting unemployment benefits." Appellants' Brief at 2–4.

The Act applies to contractors who employ 25 or more persons and perform food, janitorial, maintenance, or nonprofessional health care services. DWPA § 2(a), (b). Such contractors must "retain, for a 90–day transition period, covered employees [1] who have been employed by the previous contractor for the preceding 8 months or longer at the site or sites covered by the contract." *Id.* at § 3(b). During the transition period, the new contractor may dismiss "retained" employees— beginning with the least senior—in excess of the number that it "determines ... are required to perform the new contract," *id.* at § 3(c); other covered employees, however, may be terminated only for "cause." *Id.* at § 3(e). The DWPA also requires that the new contractor "shall [at the end of the transition period] perform a written performance evaluation for each employee retained pursuant to this act"; if the employee's performance is found to be satisfactory, the contractor "shall offer the employee continued employment under the terms and conditions established by the new contractor." *Id.* at § 3(f). The DWPA provides employees discharged in violation of the Act a cause of action for back pay, costs, and attorney's fees in the Superior Court of the District of Columbia. *Id.* at § 4.

### B. *Procedural Background*

On May 24, 1994, appellees filed a three-count complaint for declaratory and injunctive relief in the district court.[2] Appellees advanced three primary theories for the proposition that the DWPA was preempted by federal law, as well as a claim of unconstitutionality under the Contracts Clause.

First, appellees argued that the DWPA is preempted by § 14(a) of the NLRA. The district court agreed. Specifically, it found that the DWPA "conflicts with § 14(a) by ... infring[ing] upon contractors' abilities to en-

sure the loyalty of their supervisors." *Washington Service Contractors Coalition v. District of Columbia,* 858 F.Supp. 1219, 1225 (D.D.C.1994). The court held that "the DWPA's application to supervisors must [accordingly] be enjoined." *Id.* at 1227.

Appellees also argued that the DWPA is preempted by federal law because it could transform some non-union contractors who "retain" union employees into "successor" employers under the NLRB's jurisprudence, and so oblige the new contractors to bargain with the union that represented their predecessors' employees. This, appellees claimed, represents an impermissible state incursion into the collective bargaining processes regulated by federal law. The district court again agreed. It held that "the DWPA's effect ... on collective bargaining so significantly alters the balance of power between labor and management that this Court must find that the DWPA is preempted by the NLRA." *Id.* at 1229. The court therefore "enter[ed] a declaratory judgment ... permanently enjoin[ing]" the Act's enforcement. *Id.* at 1230.

Appellees contended as well that the NLRA preempts the DWPA because it "improperly regulates [contractors'] right to hire whomever they wish." *Id.* at 1227. The district court wrote that "it is not clear whether this inhibition on free enterprise alone would be adequate to justify NLRA preemption," *id.* at 1229, but found it unnecessary to resolve the question in light of its other rulings in the case. The court also did not reach appellees' Contracts Clause claim.

The District and SEIU opted not to appeal the district court's ruling that § 14(a) of the NLRA preempts application of the DWPA to supervisors. Appellees argue that this appeal is therefore moot on the theory that the district court's unchallenged § 14(a) ruling, standing alone, is sufficient to justify the whole of its injunction on the application of the DWPA. In addition, appellees continue

---

1. The DWPA does not define "covered employees," but it does provide that "persons employed less than 15 hours per week and [ ] persons employed in an executive, administrative, or professional capacity as defined by the Secretary of Labor under § 13(a)(1) of the Fair Labor Stan-

dards Act" are exempt from the Act's coverage. DWPA § 2(a).

2. The complaint named the District as defendant. On June 7, 1994, the district court permitted SEIU to intervene as additional defendants.

to maintain that the DWPA is preempted because of its potential interference with federal successorship doctrine and employers' hiring decisions, and that it is invalid under the Contracts Clause.

## II. ANALYSIS

### A. *Preemption Principles*

█ Under the Supremacy Clause, U.S. CONST. art. VI, cl. 2, state law is preempted when Congress has acted to "occupy the field," *see, e.g., Fidelity Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). State law is not preempted, however, " 'unless that was the clear and manifest purpose of Congress.' " *See Jones v. Rath Packing Co.,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

█ The courts have evolved two distinct preemption doctrines to guide this inquiry in the NLRA context. The first of these doctrines is *"Garmon* preemption," named for *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon,* a California court awarded damages against union members under state tort law for engaging in picketing that arguably was protected under § 7 of the NLRA, but which the employer said constituted an unfair labor practice under § 8. The court reasoned that because the National Labor Relations Board ("NLRB" or "Board") had declined to exercise jurisdiction over the case—due to its insufficient effect on interstate commerce—no conflict arose from California's exercise of authority. The Supreme Court disagreed, holding that "[w]hen a [labor practice] is arguably [protected or prohibited by §§ 7 or 8 of the NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. at 780. State law is then preempted under *Garmon* when it conflicts with the "primary jurisdiction" of the NLRB to decide whether a certain labor practice is lawful under §§ 7 and 8 of the NLRA, regardless of whether the NLRB has opted to exercise its jurisdiction. *Id.*

The second preemption doctrine potentially relevant to this case is *"Machinists* preemption" named for *International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1975). In *Machinists,* an employer filed a charge with the NLRB seeking a determination that union members' refusal to work overtime was an unfair labor practice. The NLRB found that the conduct did not violate any specific provision of the NLRA. The Wisconsin state courts then granted the employer an injunction preventing employees from engaging in the challenged practice.

The Supreme Court found that "Wisconsin had [entered] into the substantive aspects of the bargaining process to an extent Congress has not countenanced." *Id.* at 149, 96 S.Ct. at 2557. The Court reasoned that while the NLRA neither explicitly protected nor prohibited the particular bargaining tool chosen by the union members, the Act did implicitly leave to both employees and employers an area of bargaining conduct "to be controlled by the free play of economic forces." "To sanction state regulation of such economic pressure deemed by the federal Act desirabl[y] ... left for the free play of economic forces ... is denying one party to an economic contest a weapon that Congress meant him to have available." *Machinists* thus found that the Wisconsin court's action was in conflict with federal law because it trespassed on a bargaining freedom that the NLRA implicitly reserved to the employees. *Id.* at 150, 96 S.Ct. at 2558 (internal quotations and citation omitted).

### B. *Applying Preemption Law to This Case*

#### 1. *Section 14(a) and "Mootness"*

█ We begin by noting that because appellants chose not to appeal the district court's § 14(a) ruling that "the DWPA's application to supervisors must be enjoined,"

*Washington Service Contractors*, 858 F.Supp. at 1227, the merits of that portion of the judgment below are not before us. Appellees claim that we must therefore sustain the entirety of the district court's injunction invalidating the DWPA. Specifically, they argue that determining whether a particular individual is a "supervisor" falls within the "primary jurisdiction" of the NLRB, and that the DWPA is therefore invalid under *Garmon*.

Appellants misconceive the breadth of *Garmon* preemption. As we explain *supra* at 5–6, state law is preempted under *Garmon* when it conflicts with the "primary jurisdiction" of the NLRB to decide whether a certain labor practice is lawful under §§ 7 and 8 of the NLRA. *Cf. Babler Bros., Inc. v. Roberts*, 995 F.2d 911, 914 (9th Cir.1993) ("A statute falls within the scope of *Garmon* preemption when the statute's terms encompass matters within either the provisions of section 7 or section 8 of the NLRA."). Section 7 of the NLRA protects the rights of employees in collective bargaining, "including their right to strike, their right to picket, and their right to join or not to join a union." *Id.* In this case, the rights of employees to bargain collectively are not affected by the DWPA. The employees remain free to bargain with employers, and to join or not to join a union. The DWPA therefore raises no issue that the NLRB would have jurisdiction to decide under § 7.

Section 8 of the NLRA regulates unfair labor practices. In general, § 8 prohibits employers and labor organizations from interfering with the employee rights protected under § 7. Section 8(a) governs unfair conduct by employers toward employees; section 8(b) regulates unfair labor practices by union organizations. The "terms" of the DWPA thus do not "encompass" any matter even arguably regulated by § 8 of the NLRA. Therefore, while we need not consider the propriety of the district court's § 14(a) ruling on the merits, we reject appellees' suggestion that *Garmon* requires us to broaden it to enjoin all applications of the Act, and so to moot the remaining issues.

### 2. The "Successor" Doctrine

Appellees contend that even if § 14(a) does not necessitate an injunction on all applications of the DWPA, the Act is still preempted by the NLRA because it improperly "attempts to mandate that employers become successors for NLRA purposes." The NLRB's "successorship doctrine" "arises [out of the] operation of the [NLRA]," *Maintenance, Inc.*, 148 N.L.R.B. 1299, 1301 (1964), and requires an employer to recognize and bargain with a union that had been named the bargaining representative of the employees under a predecessor employer if there remains a "substantial continuity in the employing industry." *See, e.g., Miami Industrial Trucks*, 221 N.L.R.B. 1223, 1224, 1975 WL 6568 (1975). Whether such "substantial continuity" exists is determined by the Board on the "totality of the circumstances." *See, e.g., International Union of Electrical Workers v. NLRB*, 604 F.2d 689, 694 (D.C.Cir. 1979). Among the factors the Board considers is whether an employer elected to hire its predecessor's employees as a majority of its workforce. *See NLRB v. Burns Int'l Security Services, Inc.*, 406 U.S. 272, 281, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972). If so, the Board generally presumes that "the union certified to represent [the predecessor's employees] still represent[s] a majority of the [new employer's] employees...." *Id.* at 278–79, 92 S.Ct. at 1577 (and cases cited).

Appellees argue that under certain circumstances the DWPA could *require* an employer to hire its predecessors' employees as a majority of its workforce, and that the employer would then be required to bargain with the union of its predecessors' employees under the NLRB's successorship doctrine. This, according to appellees and the district court, would represent an "impermissib[e] intru[sion]" on employers' collective bargaining rights, and the DWPA is therefore preempted under the *Machinists* preemption doctrine. *Washington Service Contractors*, 858 F.Supp. at 1229.

While this argument is not without appeal, it contains a logical flaw. Were a contractor to be required by the DWPA to retain its predecessors' union employees as a majority of its workforce, it is not at all clear whether

the NLRB would oblige the new employer to bargain with the union of its predecessors' employees. As we note *supra* at 816, the application of the successorship doctrine depends on the "totality of the circumstances"; where the employer has been required by local law to hire a majority of its predecessors' employees, the NLRB may or may not impose successorship obligations on the new employer. We will not know until the NLRB addresses the issue. At that time, if the NLRB determines that the successorship doctrine does not apply, appellees' alleged "conflict" will disappear. On the other hand, if the NLRB—the body to whom Congress has entrusted the evolution of federal labor policy, *see, e.g., Local 926, Int'l Union of Operating Engineers v. Jones,* 460 U.S. 669, 681, 103 S.Ct. 1453, 1461, 75 L.Ed.2d 368 (1983)—determines that the successorship doctrine should apply in such circumstances, it is difficult to see how appellees could argue that the result would invoke "conflict" between the DWPA and the NLRA. Such a ruling by the NLRB would presumably represent the Board's judgment that enforcing its successorship requirement in the context of DWPA hires would be congruent with the aims of the NLRA.

Moreover, even if the NLRB's application of its successorship doctrine to DWPA hires could somehow engender "conflict" between the local and federal Acts, it would not appear to be preemptive conflict within the ambit of the *Machinists* doctrine. As we explain *supra* at 815, *Machinists* indicates that state laws that trespass on bargaining tactics implicitly left open to employees or employers under the NLRA must yield. We cannot imagine any such freedom implicitly left to employers by the NLRA that would be compromised were the NLRB to require employers to recognize the union of DWPA hires. Certainly the NLRA contains no implicit right of an employer to refuse to hire employees on the basis of union membership, or to refuse to recognize a union approved by the majority of its employees. Indeed, quite the opposite is true—§ 8 of the NLRA affirmatively prohibits the employer from indulging in either of these behaviors. *See, e.g., Burns,* 406 U.S. at 277, 279–80 & n. 5, 92 S.Ct. at 1577, 1578 & n. 5. Application of the

successorship doctrine under the DWPA therefore would not require the employer to do anything that it has a right under the NLRA to refuse.

## C. Hiring Freedom

Appellees also argue that quite apart from any conflict that might exist between the DWPA and federal successorship doctrine, the Act is preempted under *Machinists* because the NLRA demonstrates Congress's desire that hiring decisions be left to the "free play of economic forces." 427 U.S. at 150, 96 S.Ct. at 2558. This argument reflects a misunderstanding of *Machinists* preemption.

Again, *Machinists* held that within the regulatory orbit of the NLRA—*i.e.,* the right of union organization and the collective bargaining process—state and local entities are without authority to suppress particular bargaining tactics. "To sanction state regulation of [ ] economic pressure deemed by the federal Act desirabl[y] ... left for the free play of economic forces ... is denying one party to an economic contest a weapon that Congress meant him to have available." *Id.* *Machinists* accordingly does not preempt local regulation of *any* facet of the employment relationship, but rather only those laws that disturb the labor dispute resolution system established by the NLRA.

The Supreme Court has therefore declined to apply *Machinists* preemption to state employee protective legislation applicable outside the bargaining context. In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 754, 105 S.Ct. 2380, 2396–97, 85 L.Ed.2d 728 (1985), the Court rejected a *Machinists* challenge to a state law mandating minimum health benefits, even though such benefits would otherwise have been subject to bargaining between the parties. The Court explained that the NLRA "is concerned [ ] with establishing an equitable *process* for determining the terms and conditions of employment [emphasis added]," and is "entirely unrelated to local or federal regulation establishing minimum terms of employment." *Id.* In this case, as in *Metropolitan Life,* the local authority has not disturbed the process

established by the NLRA for resolving labor disputes. Instead, the District has enacted substantive employee protective legislation having nothing to do with rights to organize or bargain collectively. The NLRA does not preempt such legislation.

## D. *The Contracts Clause*

█ Finally, because we reject appellees' preemption arguments, we must reach their contention that the DWPA violates the Contracts Clause of the Constitution. Article I, § 10 of the Constitution provides in pertinent part that "[n]o state shall ... pass any ... law impairing the Obligation of Contracts." Appellees claim that the DWPA violates this prohibition by "forc[ing] contractors to terminate the employment relationship they have with their current employees, and [by] also requir[ing] contractors to establish and maintain an employment relationship with unknown employees of a prior contractor."

█ Under the Supreme Court's Contracts Clause jurisprudence, the threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corporation v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992).

Appellees' claim that the DWPA requires them to "establish and maintain" employment relationships is therefore clearly not cognizable under the Contracts Clause. The argument does not suggest that any of the three prongs of *General Motors* are met; there is no existing contractual relationship to be "impaired," to say nothing of "substantially" so.

The contractors' claim that the DWPA "forces [them] to terminate the employment relationship they have with their current employees" is, on its face, more plausibly a Contracts Clause claim. But the argument is not substantiated on the record before this court. On its face, the DWPA only requires contractors to *hire* their predecessors' employees, not to *fire* their own employees. It is therefore not surprising that appellees have shown no instance in which a particular employment contract was "impaired" through operation of the DWPA. This challenge, too, therefore fails the test enunciated by the Supreme Court in *General Motors*.

## III. CONCLUSION

We reject appellees' claims that the DWPA is preempted by the NLRA and invalid under the Contracts Clause. The case is remanded to the district court for proceedings consistent with this opinion.[3]

*Reversed and remanded.*

SENTELLE, Circuit Judge, dissenting:

This is an appeal from a district court judgment granting an injunction against the enforcement of a unique District of Columbia statute known as the District of Columbia Displaced Workers Protection Act of 1994, 41 D.C.Reg. 1011 (to be codified at D.C.CODE ANN. §§ 36-1501 to 1504) ("DWPA"). The DWPA requires service contractors who successfully bid on a contract previously held by a competitor to hire the previous contractor's work staff. The contractor may not then terminate any of those employees for a period of ninety (90) days except for "cause." *Id.* at § 3(e). At the end of the 90 days, the DWPA requires the contractor to perform a written evaluation of the "retained" employees and offer them continued employment if their performance has been "satisfactory." *Id.* at § 3(f). Plaintiffs, appellees here, sought injunction both on the grounds that the statute was preempted by the National Labor Relations Act ("NLRA"), and that the DWPA was violative of the contracts clause of the United States Constitution. The district court did not reach the constitutional grounds, but enjoined the enforcement of the Act on preemption grounds. Because I

---

3. We expect that on remand the district court will limit its injunction to enjoin applications of the DWPA to supervisors only, a disposition to which appellants essentially consented by not appealing the court's prior § 14(a) ruling.

agree with the district court on the preemption ground, I would affirm its judgment. Like the district court, I would not reach the constitutional question.

## ANALYSIS

### A. The "Supervisors" Argument

The district court held that a provision of the DWPA requiring contractors to retain their predecessors' supervisors in supervisory positions is in conflict with "federal labor policy as enunciated in § 14(a) of the NLRA." *Washington Service Contractors Coalition v. District of Columbia,* 858 F.Supp. 1219, 1226 (D.D.C.1994). Based on that holding, the court found "that the DWPA's application to supervisors must be enjoined." *Id.* at 1227. The District of Columbia did not appeal from that holding. Inexplicably, appellees claim that the District's failure to appeal this issue renders the entire appeal moot.

This argument is meritless. On totally separate grounds, the district court enjoined the enforcement of the balance of the Act in all other applications. The District of Columbia did appeal from that holding. Thus, the only question mooted by the District's failure to appeal from the first holding is the question of supervisor coverage. That question is not before us. Therefore, I do not join the majority's discussion of it. I do join the majority's conclusion that the failure to appeal from the 14(a) holding does not moot the rest of this appeal.

### B. The General Preemption Argument

In addition to its 14(a) holding on which the district court based its application of the DWPA to supervisors, the district court also held, in a separately delineated section of its opinion, that the entire DWPA is preempted by the NLRA on grounds related to the doctrine of successorship under the NLRA, and on that basis and that basis alone, the district court enjoined the enforcement of the DWPA in all cases. *Contractors,* 858 F.Supp. at 1229–30. It is from this holding that the District of Columbia appeals and it is this holding that I would affirm.

In my view, the district court's opinion reflects the proper preemption analysis under federal labor law. In *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971), the Supreme Court held that where preemption under the NLRA is otherwise appropriate, the only relevant exception exists where the arguably preempted "rule of law ... is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interest promoted by the federal labor statutes." I submit that this Supreme Court declaration governs this case.

The basic approach to preemption questions under the NLRA is enunciated by the Supreme Court in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), as further elucidated in *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), and in *International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The *Lockridge* Court, in explaining *Garmon* and the resulting line of labor preemption cases, noted, as the majority here suggests, that "we cannot declare preempted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions;" but at the same time declared that federal courts cannot "proceed on a case-by-case basis to determine whether each particular final judicial pronouncement does, or might reasonably be thought to, conflict in some relevant manner with federal labor policy." 403 U.S. at 289, 91 S.Ct. at 1919. The majority's refusal to find preemption in the present context based upon its determination that the NLRB could apply its successorship doctrine to DWPA hires in a fashion that would avoid conflict seems to me to reverse the Supreme Court's *Garmon/Lockridge* analysis and undertake the case-by-case approach rejected by the Supreme Court in that decision.

The proper question under *Garmon* is not whether some applications of the local law directly violate the NLRA, but rather whether "it is clear or may fairly be assumed that

the activities which a state [or in this case the District of Columbia] purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8...." 359 U.S. at 244, 79 S.Ct. at 779. If the answer is yes, then "due regard for the federal enactment requires that state jurisdiction must yield." *Id.*

As the district court recognized, the Supreme Court later expanded NLRA preemption from the *Garmon* foundation to a second category in *International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The *Machinists* Court proceeded from recognition of *Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964), that even where conduct is "neither protected nor prohibited [by § 7 or § 8], it is still necessary to determine whether ... 'Congress occupied this field and closed it to state regulation.'" *Id.* at 258, 84 S.Ct. at 1257–58 (quoting *Automobile Workers v. O'Brien,* 339 U.S. 454, 457, 70 S.Ct. 781, 783, 94 L.Ed. 978). This "occupation of the field" referred not to the entire field of labor law, but rather to the particular area of activity within the field of labor law about which the state government is purporting to enforce regulations. The *Machinists* Court noted that even before *Morton,* in *Garmon* itself, the Court had "expressly recognized that 'the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the states.'" *Machinists,* 427 U.S. at 144–45, 96 S.Ct. at 2555 (quoting *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780). From this existing precedent, the *Machinists* Court derived the principle, previously suggested in *Garmon* and *Morton,* that state regulation is preempted not only by the specifics of §§ 7 and 8, but also where conduct has been "left by Congress to the free play of economic forces...." *Machinists,* 427 U.S. at 147, 96 S.Ct. at 2556. The district court held, in my view correctly, that the DWPA intrudes upon this latter sort of preempted area.

In *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 549, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964), the Supreme Court expressly recognized "the rightful prerogative of owners independently to rearrange their businesses...." In *National Labor Relations Board v. Burns International Security Services,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), the Court recognized that there had never been a holding that the NLRA "requires that an employer who submits the winning bid for a service contract ... [is] obligated to hire all of the employees of the predecessor...." *Id.* at 280 n. 5, 92 S.Ct. at 1578 n. 5. And in *Howard Johnson Co., Inc. v. Hotel Employees,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), the Court cited *Burns* as establishing that a "successor" employer "ha[s] the right not to hire any of the former [predecessor] employees, if it so desire[s]." *Id.* at 262, 94 S.Ct. at 2243.

Where an employer purchasing the assets of another business chooses to hire his predecessor's employees, federal law does erect a successorship obligation of bargaining with specific and fairly complex rules. *See generally John Wiley & Sons, supra,* and *Howard Johnson, supra.* Where the successorship doctrine does not apply, it seems apparent to me that under the NLRA as interpreted by the Supreme Court, Congress intentionally left the area of successorship obligations to be controlled by the free play of market forces; therefore, *Machinists* preemption applies; therefore, I would affirm.