

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2004

# St Thomas St John v. Gov of VI

Precedential or Non-Precedential: Precedential

Docket No. 02-3621

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"St Thomas St John v. Gov of VI" (2004). *2004 Decisions.* Paper 958.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/958

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

No: 02-3621

_____

THE ST. THOMAS - ST. JOHN HOTEL
&
TOURISM ASSOCIATION, INC.;
THE ST. THOMAS - ST. JOHN
CHAMBER OF
COMMERCE, INC. and THE ST.
CROIX HOTEL & TOURISM
ASSOCIATION, INC.,

Appellants

v.

GOVERNMENT OF THE UNITED
STATES
VIRGIN ISLANDS BY AND
THROUGH
THE VIRGIN ISLANDS
DEPARTMENT
OF LABOR; ELECUTERIA ROBERTS
IN HER OFFICIAL CAPACITY AS
ACTING
COMMISSIONER OF THE VIRGIN
ISLANDS
DEPARTMENT OF LABOR

ESLA HUGGINS, LADIAH WHYTE,
(Intervenor in D.C.)

_____

Appeal from the District Court of the
Virgin Islands

(D.C. Civil Action No. 99-cv-00054)
District Judge: Honorable Thomas K.
Moore

_____

Argued on April 28, 2003

Before: ROTH, MCKEE and COWEN
Circuit Judges

(Opinion filed  February 11, 2004)

Iver A. Stridiron
Attorney General

Elliott M. Davis
Solicitor General

Carol S. Moore
Assistant Attorney General
Department of Justice
48B-50C Kronprindsens Gade
GERS Building, 2nd Floor
Charlotte Amalie
 St. Thomas, USVI 00802

Kathleen Navin, Esquire (Argued)
Legal Services of Virgin Islands
3017 Estate Orange Grove
Christiansted
Saint Croix, USVI, 000820

Counsel for Appellees

Charles E. Engeman, Esquire (Argued)
David J. Comeaux, Esquire
Ogletree, Deakins, Nash, Smoak &
Stewart, LLC
1336 Beltjen Road, Suite 202
Charlotte Amalie
St. Thomas, USVI 00802

Counsel for Appellants

ROTH, <u>Circuit Judge</u>

This appeal presents the question whether the Virgin Islands Wrongful Discharge Act (WDA), 24 V.I. Code Ann. §§ 76-79 is preempted by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, and, if not, whether the application of the WDA to supervisors is preempted by the NLRA. A prior panel of this Court addressed the first issue at the preliminary injunction phase and decided that the WDA was not preempted. We adhere to that decision. The prior panel left open the second issue. On remand, the District Court held that the NLRA does not preempt the application of the WDA to supervisors. This appeal followed.

## I. Facts and Procedural History

In 1986, the Virgin Islands legislature enacted Section 76 of the WDA, which limited the grounds upon which an employer may terminate an employee. The statute provided, in relevant part, as follows:

> (a) Unless modified by contract, an employer may dismiss an employee:
>
> (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
>
> (2) whose insolent or offensive conduct towards a customer of the employer injures the employer's business;
>
> (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;
>
> (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are complete;
>
> (5) who performs his work assignments in a negligent manner;
>
> (6) whose continuous absences from his place of employment affect the interests of his employer;
>
> (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

\*\*\*\*

(c) Any employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged; however, nothing in this section shall be construed as prohibiting an employer from terminating an employee as a result of the cessation of business operations or as a result of a general cutback in the work force due to economic hardship, or as a result of the employee's participation in concerted activity that is not protected by this title.

24 V.I. Code Ann. § 76 (1986). Any employee covered by the WDA and discharged in violation of Section 76 may file an administrative complaint with the Commissioner of Labor, who has the authority to order reinstatement and back pay. 24 V.I. Code Ann. § 77. In addition, an employee may file a lawsuit for compensatory and punitive damages. 24 V.I. Code Ann. § 79.

In 1996, the Virgin Islands legislature amended the first sentence of subsection (a) of the statute to state "[u]nless modified by union contract . . .." 24 V.I. Code Ann. § 76 (1996) (emphasis added). This amended provision has been interpreted to apply to all employees in the Virgin Islands, absent a collective bargaining agreement setting discharge terms to the contrary. See St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands, 218 F.3d 232, 236 (3d Cir. 2000) (Hotel Association II).[1]

On April 5, 1999, the St. Thomas–St. John Hotel & Tourism Association, Inc., the St. Thomas–St. John Chamber of Commerce, Inc., and the St. Croix Hotel & Tourism Association, Inc. (collectively the "associations") filed this action in the District Court of the Virgin Islands against the Government of the Virgin Islands, the Virgin Islands Department of Labor, and the Acting Commissioner of the Department of

---

[1] In 2000, the Virgin Islands Legislature amended the definition of "employee" under the WDA to exclude "any person employed in a bonafide position in an executive or professional capacity." See St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands, 216 F. Supp. 2d 460, 462 (D.V.I. 2002) (Hotel Association III). The issue of the coverage under the WDA of supervisory employees who are not executives or professionals is still, however, before us.

3

Labor, seeking to restrain the enforcement of the WDA in any pending or future WDA wrongful discharge proceeding. Elsa Huggins and Ladiah Whyte, two employees who have WDA claims pending before the Department of Labor, intervened as additional defendants. The associations alleged that the WDA was preempted by the NLRA and deprived them of federal rights in violation of 42 U.S.C. § 1983. They sought declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, injunctive relief under 42 U.S.C. § 1983, and attorney's fees under 42 U.S.C. § 1988 and 5 V.I. Code Ann. § 541.

Following a hearing, the District Court concluded that the plaintiffs were likely to succeed on the merits of their preemption claim and issued a preliminary injunction. See St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands, Civ. No. 1999-54, 1999 WL 376873 (D.V.I. June 3, 1999) (Hotel Association I). We reversed, holding that:

> the WDA is not preempted by the NLRA even though it provides an opt-out by express terms of union contract. . . . [T]he WDA does not force an employee to choose between collective bargaining and the protections of state law; rather, it protects all Virgin Island employees, but gives employees the option of relinquishing the territorial

statutory protections through the terms of the collective bargaining agreement.

Hotel Association II, 218 F.3d at 245. However, in Hotel Association II, the Court expressly left open the issue whether the WDA, as applied to supervisors, was preempted by the NLRA. In remanding the case to the District Court to grant summary judgment to the defendants on the issue of general preemption, we noted that "there remains for decision by the District Court the associations' claim that the WDA should not be applied to supervisors." Id. at 246.

On remand, the District Court denied the associations' motion for summary judgment on the question whether the NLRA preempts the WDA as applied to all employees. Following supplemental briefing, the District Court held that the NLRA does not preempt application of the WDA to supervisors and granted defendants' motion for summary judgment as to all claims. See St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands, 216 F. Supp. 2d 460, 466-68 (D.V.I. 2002) (Hotel Association III).[2] Plaintiffs timely

_____

[2]The District Court also held that supervisors are covered by the WDA because supervisors are employees under 24 V.I. Code Ann. § 62. See Hotel Association III, 216 F. Supp. 2d at 463-64. Since plaintiffs do not appeal this issue, we do not address it.

4

appealed.[3]

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this federal question pursuant to 28 U.S.C. § 1331. We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. Chisolm v. McManimon, 275 F.3d 315, 321 (3d Cir. 2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986).

## III. Discussion
1. Preemption of the WDA as Applied to

all Employees:

We decline the associations' request that we reconsider the prior panel's holding in Hotel Association II regarding preemption of the WDA as applied to all employees. Under the law of the case doctrine, "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case. The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity." In re City of Philadelphia Litig., 158 F.3d 711, 717-18 (3d Cir. 1998).

However, as this Court recognized in Council of Alternative Political Parties v. Hooks, "'while the law of the case doctrine bars courts from reconsidering matters actually decided, it does not prohibit courts from revisiting matters that are avowedly preliminary or tentative.'" 179 F.3d 64, 69 (3d Cir. 1999). Preliminary injunctions are, by their nature, tentative and impermanent. See R.R. Yardmasters of Am. v. Pennsylvania R.R. Co., 224 F.2d 226, 229 (3d Cir. 1955). Thus:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions

---

[3]We note with great concern that the Government of the United States Virgin Islands, the Virgin Islands Department of Labor, and the Commissioner of the Department of Labor did not see fit to send an attorney to oral argument of this appeal before us. The only defendants who were represented at oral argument were the intervenors, but their attorney admitted that the intervenors were not supervisors. Nevertheless, despite the intervenors' lack of standing to address the issue of the status of supervisors, we permitted them to present argument in support of the government's position in light of the need to have a full discussion of this important issue.

5

are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not biding at trial on the merits.

Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

Nevertheless, under this standard for preliminary matters, the plaintiffs have pointed to no adequate reason for departing from the holding in Hotel Association II. There is no intervening new facts or law. See In re City of Philadelphia Litig., 158 F.3d at 718. Nor was the earlier decision so clearly erroneous that it would create a manifest injustice. See id. Finally, the plaintiffs have not pointed to anything about the more informal procedure of determining whether to grant or deny a preliminary injunction that resulted in an erroneous decision. See Camenisch, 451 U.S. at 395. Therefore, this panel adheres to the decision in Hotel Association II that the WDA, as applied to employees, is not preempted by the NLRA.

2. Preemption of the WDA as Applied to Supervisors:

Turning to the issue left open by Hotel Association II, we hold that the District Court in Hotel Association III erred in concluding that the WDA, as applied to supervisors, is not preempted by the NLRA. The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. This principle applies to the laws of the Virgin Islands through the Revised Organic Act, which authorizes the Virgin Islands legislature to enact territorial laws that are "not inconsistent with . . . the laws of the United States made applicable to the Virgin Islands . . . ." 48 U.S.C. § 1574(a). Under this Clause:

> The Supreme Court has recognized three general ways in which federal law may preempt, and thereby displace, state law: 1) "express preemption," which arises when there is a an explicit statutory command that state law be displaced, see Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992); 2) "field preemption," which arises when federal law "so thoroughly occupies a legislative field as to make

6

reasonable the inference that Congress left no room for the states to supplement it," Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotation omitted); and 3) "conflict preemption," which arises when a state law makes it impossible to comply with both state and federal law or when state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

Hotel Association II, 218 F.3d at 238.

Since the NLRA does not contain an express preemption provision and it regulates an area traditionally regulated by the states, there is a presumption that Congress did not intend to displace state law. See id. Thus, state law will not be preempted by the NLRA unless the state law conflicts with the NLRA's express provisions or underlying goals and policies. See id. A state or territorial law conflicts with the NLRA if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. See id.[4]

---

[4]The District Court in Hotel Association III correctly recognized that the proper analysis in this case is not guided by the two dominant federal labor

Section 14(a) of the NLRA provides that "no employer . . . shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

---

law preemption principles set forth in San Diego Building Traders Council v. Garmon, 359 U.S. 236 (1959) and International Ass'n of Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976). See Hotel Association III, 216 F. Supp. 2d at 465 n. 4. Garmon preemption displaces state jurisdiction over conduct which is "arguably within the compass of § 7 or § 8 of the Act." Hotel Association II, 218 F.3d at 239 (quoting Garmon, 359 U.S. at 246). Machinists preemption is a form of conflict preemption under which state regulation of the bargaining conduct of private parties is displaced because it conflicts with the purpose of Congress in enacting the NLRA to leave that conduct "to be controlled by the free play of economic forces." Id. (quoting Machinists, 427 U.S. at 140). However, while the subspecies of Garmon and Machinists preemption often are invoked in connection with the NLRA, the field of labor law also is subject to the general preemption principles outlined above. See id. Thus, the issue in the present case is whether, under general principles of conflict preemption, the WDA conflicts with the NLRA. See id.; Livadas v. Bradshaaw, 512 U.S. 107, 120 (1994).

7

29 U.S.C. § 164(a). The purpose of this section is to redress a perceived imbalance in labor-management relationships that arose from putting supervisors in the position of serving two masters with opposing interests, namely their employer and their union. See Beasley v. Food Fair of North Carolina, 416 U.S. 653, 657 (1974). The Supreme Court in Beasley recognized that "'Congress' propelling intention [in enacting Section 14(a)] was to relieve employers from any compulsion under the Act and under state law to countenance or bargain with any union of supervisory employees . . ..'" Id. at 657 (quoting from Hanna Mining Co. v. District 2, Marine Engineers Beneficial Ass'n, 382 U.S. 181, 189 (1965)). Thus, the Court struck a state statute that permitted supervisors to seek damages against employers who discharged them for union membership because it "plainly put pressure on [the employers] 'to accord to the front line of management the anomalous status of employees,' and would therefore flout the national policy against compulsion upon employers from either federal or state agencies to treat supervisors as employees." Id. at 662 (quoting S.Rep. No. 105 80th Cong., 1st Sess. at 5 (1947)). Beasley, thus, teaches that state (or territorial) laws that pressure employers to accord supervisors the status of employees for collective bargaining purposes conflict with Section 14(a) of the NLRA. See id. As noted in the Senate Report quoted in Beasley, the result of supervisors serving two masters, and not being loyal to the employers' interests, was evident in the coal mines, where, after supervisory employees were organized, disciplinary slips fell off by two thirds and the accident rate doubled. Id. at 661 (quoting S.Rep. No. 105 at 3, 4).

Turning then to the territorial law before us, if the WDA is applied to supervisors, the only way for an employer to alter or expand the WDA's nine enumerated grounds for terminating a supervisor/employee would be to enter a "union contract" with the supervisor. But the qualities an employer looks for in supervisors are not the same as those an employer looks for in employees. There are aspects of management that extend beyond the work qualities enumerated in the causes for discharge permitted under the WDA. An employer may consider it essential that a supervisor's mastery of these aspects of management be a condition of employment. Under the WDA, however, in order to incorporate those other grounds for discharge into an employment contract with a supervisor, the employer would have to bargain with the supervisor as an employee. Moreover, if the supervisors, as the front line of management, were answerable not only to the employer but also to the union, the employer's ability to safely, efficiently, and productively manage the business might suffer.

Under Beasley, pressure upon employers to treat supervisors as employees and to bargain with them as such violates Section 14(a). See 416 U.S. at 657. We conclude that the WDA would have such an effect on employers by

8

exerting a significant degree of compulsion upon employers to bargain with supervisors as employees; thus the WDA violates Section 14(a).

The District Court in Hotel Association III, however, read Beasley as holding that a state or territorial statute conflicts with Section 14(a) only when the effect of the statute is to "afford supervisors a cause of action that they would not otherwise have under the NLRA." Hotel Association III, 216 F. Supp. 2d at 465. This reading of Beasley is incomplete. The holding in Beasley is not merely that it is a violation of Section 14(a) if state law affords supervisors a cause of action that they would not have under thE NLRA. Beasley goes further to establish that it is a violation of Section 14(a) if the state law "relating to collective bargaining," – whether or not it affords a cause of action to supervisors – "'puts pressure on [employers] to accord to the front line of management the anomalous status of employees.'" 416 U.S. at 662 (quoting S .Rep. No. 105 at 5). Such a law would "flout the national policy against compulsion upon employers from either federal or state agencies to treat supervisors as employees." Id.

So long as a state or territorial statute creates some pressure to bargain collectively with supervisors, be it direct or indirect, the statute creates the possibility of forcing employers to divide the loyalties of their supervisors between the employer and the union. As Beasley recognized, it is this pressure that Section

14(a) seeks to combat. The directness of the pressure may affect the strength of the incentive rather than its existence. However, the Supreme Court, by stating in Beasley that Congress intended to prevent "any compulsion," clearly recognized that Section 14(a) prohibits the creation of any pressure to collectively bargain with supervisors. 416 U.S. at 657.

Thus, in Washington Service Contractors Coalition v. District of Columbia, the District Court for the District of Columbia held that a statute that indirectly compelled an employer to bargain collectively with supervisors conflicted with Section 14(a). See 858 F. Supp. 1219, 1221 (D.D.C. 1994), rev'd on other grounds, 54 F.3d 811 (D.C. Cir. 1995). In that case, the District of Columbia enacted a statute that required contractors to retain many of their predecessor's employees after the contractors took over a service contract. The District Court held that the statute compelled the employer to bargain with the supervisors collectively in violation of Section 14(a). The court found that, because the statute applied to supervisors, if a predecessor's supervisors were unionized, the statute could indirectly compel an employer to bargain collectively with supervisors by preventing the employer from terminating the predecessor's supervisors. See id. at 1225.

As in Washington Service Contractors Coalition, the WDA does not directly require that an employer collectively bargain with supervisors.

9

Nevertheless, the WDA indirectly compels an employer to bargain collectively with supervisors by requiring that an employer who wishes to alter the WDA's grounds for terminating a supervisor enter into a collective bargaining agreement. Since this limitation constitutes pressure to bargain with supervisory employees, the WDA, as applied to supervisors, conflicts with Section 14(a) of the NLRA

## IV. Conclusion

For the reasons stated above, the judgment of the District Court as to general preemption will be affirmed. The judgment in favor of the government defendants as to the application of the WDA to supervisors will be vacated and this question will be remanded to the District Court with instructions to enter judgment in favor of plaintiffs.