**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**WILLIAM G. CLARKE, Defendant**

Criminal No. ST-09-CR-020

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

May 12, 2010

185

RENEE GUMBS-CARTY, ESQ., BRENDA C. SCALES, ESQ., Assistant Attorney Generals, St. Thomas, USVI, *Attorneys for the Plaintiff.*

VINCENT COHEN, JR., ESQ., MARK E. SCHAMEL, ESQ., Schertler & Onorato, LLP, Washington, D.C., *Attorneys for the Defendant.*

KERRY E. DRUE, ESQ., Law Offices of Kerry E. Drue, St. Thomas, USVI, *Attorney for the Defendant.*

JOYCELYN HEWLETT, ESQ., Assistant U.S. Attorney, St. Thomas, USVI, *Attorney for U.S.A.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(May 12, 2010)

## I. INTRODUCTION

Contending that this Court committed "clear error" in denying Defendant William Clarke's Motion to Dismiss the Information Based on

Supremacy Clause Immunity, Defendant filed on March 29, 2010, a Motion for Reconsideration of the Court's ruling, citing for the first time, authority to support his opposition to the Court's March 19, 2010 bench ruling. On April 21, 2010, the People filed an Opposition to Defendant's Motion for Reconsideration refuting any merit to Defendant's motion not only substantively but also on procedural grounds. Out of an abundance of caution, this Court has reconsidered its decision based on the submissions filed, but after reviewing the filings and for reasons that follow, this Court finds no basis to deviate from its initial ruling to deny Defendant's Motion to Dismiss Based on Supremacy Clause Immunity. Accordingly, the Court's ruling denying Defendant's Motion to Dismiss Based on Supremacy Clause Immunity remains undisturbed.

## II. FACTS[1] AND PROCEDURAL POSTURE

On Sunday, September 7, 2008, between approximately 8:00 a.m. and 8:30 a.m., Marcus Sukow (hereafter "Sukow") and a female traveled to "Molly Malone," a restaurant in the Red Hook area, for breakfast. Upon returning to their shared condo at Mahogany Run, Sukow and the female had a disagreement. As a result, the female took her keys and abruptly exited the Condo. Sukow began shouting at the female from inside the condo and eventually ventured outside the unit. The female thereafter returned to the condo.

Sometime after the female returned, she again left the unit, got into a vehicle and attempted to reverse out of a "tight" parking space where other vehicles were closely parked. Sukow then exited the condo and went to his truck to retrieve items, including a flashlight. At this point, a neighbor came out of his condo to go for a "jog" and spoke briefly to Sukow. Apparently not receptive to the neighbor's comments regarding his behavior, Sukow returned to his condo after telling the neighbor to stay out of his business.

At this point, Defendant William Clarke, (hereafter "Defendant"), exited his condo and went to his parked SUV. Defendant spoke to Sukow, asking him if he was "alright." The female then asked Defendant for a ride to the "Entry Gate" of the compound and proceeded to get into

---

[1] The facts stated herein were gleaned from the Affidavit of Detective Mario Stout in support of the four (4) Count Information filed against Defendant William G. Clarke and *not* from findings made after a hearing on the merits.

Defendant's SUV. When Sukow observed the female getting into Defendant's vehicle, he approached Defendant's car and directed the female to exit the vehicle. Sukow also directed Defendant to remove the female from his car. At this juncture, while seated inside Defendant's vehicle, the female recounted glancing down and observing the Defendant open the top of a black "vinyl" bag with his left hand, retrieve a firearm and proceed to shoot Sukow several times.

At or around the occurrence of these events, a security guard, patrolling the Mahogany Run area, indicated that he/she saw Sukow in the middle of the street, in the area of "St. Lucia Drive," obstructing the female from leaving. The security guard also observed Sukow strike the left front light of the female's car with a flashlight. When the security guard exited his vehicle to investigate the events, he heard Sukow tell a neighbor to "butt out" of his affairs. While Sukow was walking toward that individual (neighbor), the security guard observed the female leave her vehicle and enter the Defendant's car. The security guard then noticed Sukow asking the Defendant to remove the female from his SUV.

Following Sukow's request and/or directive to Defendant, the security guard indicated that the driver's door of the Defendant's vehicle opened and Sukow struck the driver's door with his flashlight. The security guard stated that he then saw Defendant draw his weapon and tell Sukow to "step back." However, Sukow did not move. Rather, Sukow stood his ground with both hands at his side when Defendant shot him several times. According to Dr. Francisco Landron, the medical examiner, Sukow died as a result of multiple gunshot wounds to his body. Defendant is a federal agent for Alcohol, Tobacco and Firearms (hereafter "ATF").

On or about January 7, 2009, Defendant was arrested on a warrant issued on November 26, 2008, by the Honorable Leon A. Kendall and bail was set at $100,000.00. At Defendant's advice of rights hearing, the Honorable James S. Carroll reduced bail to $50,000.00. The Defendant was permitted to post ten percent (10%) of that amount or $5,000.00 and was additionally required to adhere to other conditions of release.

On Thursday, January 15, 2009, the Defendant was arraigned on a four (4) Count Information, to wit: Count I, Second Degree Murder, in violation of V.I. CODE ANN. tit. 14 §§ 921, 922(b); Count II, Unlawful Use of a Dangerous Weapon During the Commission of Second Degree Murder, in violation of V.I. CODE ANN. tit. 14 § 2251(a)(2)(B); Count III, Voluntary Manslaughter, in violation of V.I. CODE ANN. tit. 14 § 924; and

Count IV, Unlawful Use of a Dangerous Weapon During the Commission of Voluntary Manslaughter, in violation of V.I. CODE ANN. tit. 14 § 2251 (a)(2)(B). The Defendant, represented by Kerry E. Drue, Esq., pled "Not Guilty" to each count in the Information. Discovery deadlines were given and the Judge assigned to the case was disclosed.

On or about February 13, 2009, before a Pretrial Conference could be scheduled, the Defendant, through his counsel, filed a Notice of Removal, pursuant to Title 28 U.S.C. § 1442(a)(1) in the District Court of the Virgin Islands.[2] A courtesy copy was filed in the Superior Court of the Virgin Islands.

On or about March 13, 2009, the People of the Virgin Islands, through the Virgin Islands Department of Justice (hereafter "DOJ"), filed in the District Court of the Virgin Islands an Opposition to the Defendant's Notice of Removal Requesting Remand of the Case to the Superior Court.

On June 25, 2009, the Honorable Curtiz Gomez, Chief Judge of the District Court of the Virgin Islands, by Published Opinion, remanded the case to the Superior Court of the Virgin Islands. (*People of the Virgin Islands v. Clarke*, 51 V.I. 1007 (D.V.I. 2009)). A Motion to Reconsider the District Court's ruling remanding the case to the Superior Court of the Virgin Islands was filed by the Defendant on June 25, 2009. A hearing on the motion for reconsideration was conducted on August 20, 2009. By Published Opinion dated August 26, 2009, the Honorable Curtis Gomez, Chief Judge of the District Court of the Virgin Islands denied the motion to reconsider (*People of the Virgin Islands v. Clarke*, Crim. No. 2009-09, 2009 U.S. Dist. LEXIS 76158, 52 V.I. 874 (D.V.I. August 26, 2009)). Defendant then filed a Notice of Appeal on August 31, 2009 to the U.S. Court of Appeals for the Third Circuit.

Given the procedural posture, this Court issued an Order dated September 11, 2009, directing counsel of record to submit Points and Authorities addressing whether the Superior Court of the Virgin Islands remained divested of jurisdiction to continue the prosecution of the matter in absence of a "Stay" being entered by either the District Court of the Virgin Islands or the U.S. Court of Appeal for the Third Circuit. While

---

[2] Actually "removal" in the unincorporated Territory of the U.S. Virgin Islands is not through 28 U.S.C. § 1442(a)(1). Rather, the removal of cases in the Territory of the U.S. Virgin Islands is done pursuant to Section 23 of the Revised Organic Act of 1954 (as amended) and codified at 48 U.S. C. § 1613.

counsel for the respective parties did file responses, the Court, before ruling, scheduled a Pretrial Conference for November 5, 2009 at 9:00 a.m. by Order dated October 22, 2009. At the Pretrial Conference, several issues were discussed including whether a motion for a "Stay" or motion to expedite the appeal was filed by either party. None having been made as of that date, the Court proceeded with the Pretrial Conference.

On January 13, 2010, this Court scheduled a status hearing on all outstanding motions for Wednesday, January 27, 2010 at 10:30 a.m. At the hearing, it was reported that no "Stay" was issued by any court and therefore this Court scheduled the Final Pretrial Conference in this matter for Wednesday, May 5, 2010 at 3:00 p.m.; Jury Selection for Friday, May 7, 2010 with the Trial to begin on Monday, May 10, 2010 at 9:00 a.m.

Thereafter on February 13, 2010, Defendant filed a Motion and Brief to Dismiss the Information With Prejudice Based on the Supremacy Clause Immunity.[3] On March 13, 2010, the People filed an Opposition. A Hearing on all outstanding motions was scheduled for Friday, March 19, 2010. The Court entered its ruling from the bench on March 19, 2010 denying Defendant's Motion and Brief to Dismiss the Information With Prejudice Based on the Supremacy Clause Immunity.

On Monday, March 29, 2010, Defendant filed a Notice of Appeal, appealing this Court's ruling from the bench that the Supremacy Clause is inapplicable to the unincorporated Territory of the U.S. Virgin Islands. The Defendant also filed on Monday, March 29, 2010, a Motion to Reconsider the Denial of his Motion to Dismiss on the Basis of the Supremacy Clause Immunity. On Tuesday, March 30, 2010, one (1) day after filing a motion to reconsider and *before* (emphasis added) the People could respond to same, Defendant filed an Emergency Motion for Entry of Judgment. On April 21, 2010, the People filed an Opposition to Defendant's Motion for Reconsideration of Motion to Dismiss Information With Prejudice Based on Supremacy Clause Immunity. On the same day, April 21, 2010, a Statement of Interest was filed on behalf of the United States of America regarding the applicability of the "Supremacy Clause" in the unincorporated Territory of the U.S. Virgin Islands.

---

[3] A motion for Change of Venue was also filed but will be addressed by separate Order.

## III. ANALYSIS

The issues ripe for resolution are: (1) whether it was clear error for this Court to rule that the "Supremacy Clause," as set forth at U.S. CONST. art. VI, cl. 2, is not applicable to the unincorporated Territory of the U.S. Virgin Islands; (2) whether the "Supremacy Clause" doctrine, as set forth at U.S. CONST. art. VI, cl. 2, is synonymous with the pre-emption provision(s) in the Revised Organic Act of 1954, as amended; and (3) whether the Defendant has identified a competing body of law to trigger any applicable pre-emption doctrine(s) under the Revised Organic Act of 1954, as amended.

### A. IT WAS NOT CLEAR ERROR FOR THIS COURT TO RULE THAT THE "SUPREMACY CLAUSE," AS SET FORTH AT U.S. CONST. ART. VI, CL. 2, IS *NOT* APPLICABLE TO THE UNINCORPORATED TERRITORY OF THE U.S. VIRGIN ISLANDS.

Citing for the first time several cases, counsel for the Defendant, in support of her motion to reconsider the denial of the motion to dismiss, asserts that the "Supremacy Clause," as set forth at U.S. CONST. art. VI, cl. 2, is indeed applicable to the unincorporated Territory of the U.S. Virgin Islands. Echoing that assertion and evidently undaunted by the "territorial incorporation" doctrine, the "territorial clause" as set forth at U.S. CONST. art. IV, § 3, cl. 2, the Revised Organic Act of 1954, as amended and codified at Title 48 U.S.C. § 1541, *et. seq.* and the *undisturbed* holdings in the infamous *Insular Cases* (1905),[4] the United States attorney's office, pursuant to 28 U.S.C. § 517, filed a Statement of Interest, on behalf of the United States of America, erroneously maintaining that the critical phrase in the Supremacy Clause for purposes of this case is that federal law is the "Supreme law of the Land," and that term logically encompasses both *territories* and states. Counsel for the

---

[4] The *Insular Cases*, also called the *Insular Tariff Cases*, began with several Supreme Court cases decided in 1901; *De Lima v. Bidwell*, 182 U.S. 1, 21 S. Ct. 743, 45 L. Ed. 1041 (1901); *Goetze v. United States*, 182 U.S. 221, 21 S. Ct. 742, 45 L. Ed. 1065 (1901); *Dooley v. United States*, 182 U.S. 222, 21 S. Ct. 762, 45 L. Ed. 1074 (1901) (Dooley I); *Armstrong v. United States*, 182 U.S. 243, 21 S. Ct. 827, 45 L. Ed. 1086 (1901); *Downes v. Bidwell*, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (1901); *Huus v. New York & Porto Rico Steamship Co.*, 182 U.S. 392, 21 S. Ct. 827, 45 L. Ed. 1146 (1901); *Dooley v. United States*, 183 U.S. 151, 22 S. Ct. 62, 46 L. Ed. 128 (1901) (Dooley II); and *The Diamond Rings*, 183 U.S. 176, 22 S. Ct. 59, 46 L. Ed. 138 (1901).

People, on the other hand, while acknowledging that *"pre-emption"* exists in the Territory of the U.S. Virgin Islands, nevertheless denies that the "Supremacy Clause," as set forth at U.S. CONST. art. VI, cl. 2, has any application to the unincorporated Territory of the U.S. Virgin Islands.

### 1. Historical Context[5]

In 1820, Chief Justice John Marshall said that the term "United States of America" refers not simply to the states that are united. Rather, "It is the name given to our great republic, which is composed of States and territories. The district of Columbia, or the territory west of the Missouri, is not less within the United States, than Maryland or Pennsylvania . . ." (*Loughborough v. Blake*, 5 Wheat 317, 18 U.S. 317, 5 L. Ed. 98 (1820)). The United States has had territories since its inception. The Northwest Territory was part of the nation when the Constitution was ratified. Congress has plenary power to legislate for the territories under the "Territorial Clause" of the Constitution, which provides that "[t]he Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . ." (U.S. CONST. art. IV, § 3, cl. 2).

Today, the United States has five (5) permanent "Off Shore" territories (using the term territory in the generic sense). In 1898, Puerto Rico and Guam were acquired as a result of the Spanish-American War. American Samoa, the only U.S. territory south of the equator, was ceded to the United States by the *matai* (chiefs) of the islands in 1900 and 1904. In 1917, on the eve of World War I, the United States purchased what is now the U.S. Virgin Islands from Denmark. Finally, in 1976, the People of the Northern Mariana Islands, situated north of Guam and formerly a part of the United Nations Trust Territory of the Pacific Islands, vote overwhelmingly, in a plebiscite to become a part of the United States. Those islands now constitute the Commonwealth of the Northern Mariana Islands (CNMI).

---

[5] The information recited and/or contained under this subsection can be found via the online link: http://law.jrank.org/pages/19118/Territories-Possessions.html#ixzz0lwXx8WFA. (*See also* Stanley K. Laughlin, *The Law of United States Territories and Affiliated Jurisdictions*, 1995 (with 1997 Supplement); Stanley K. Laughlin, *United States Territories, Their Political Status, Government and Legal Systems*, 2002).

Residents of each of the territories, except American Samoa, are United States citizens at birth. American Samoans are United States nationals by birth, but may obtain immediate United States citizenship upon establishing a domicile in any U.S. state (which they, along with other territorials, have an absolute right to do). Official and unofficial referenda in the territories consistently indicate that large majorities in each territory favor continued affiliation with the United States.

*Early* court decisions, considering the application of the Constitution in the territories, generally followed the *ex proprio vigore* (by its own force) doctrine. *However*, in the *Insular Cases* (1901), especially *Downes v. Bidwell*, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (1901), the U.S. Supreme Court moved toward the "Territorial Incorporation" doctrine, *which became settled law* by the time of *Balzac v. Porto Rico*, 258 U.S. 298, 42 S. Ct. 343, 66 L. Ed. 627 (1922). Under the "Territorial Incorporation" doctrine, *the U.S. Constitution does not* "follow the flag" and [the U.S. Constitution] is *not applicable in a territory unless that territory has been "incorporated into and made a part of the United States."* None of the current "Off Shore" territories are deemed to be "incorporated."

In addition to the distinction between "incorporated" and "unincorporated" territories, there is a distinction between "organized" and "unorganized" territories. An *organized territory* has an organic act — *an act of Congress* that establishes its government. Whereas, an *unorganized territory* is traditionally governed under the authority of the *President of the United States.*

### 2. The U.S. Virgin Islands Is An Unincorporated But "Organized" Territory Where Only Certain Constitutional Guarantees Are Extended To Its U.S. Citizens And Inhabitants Through The Revised Organic Act of 1954, As Amended.

The Virgin Islands is an unincorporated but "organized" Territory of the United States. In exercising its plenary powers, Congress enacted the Organic Act of 1917, the Organic Act of 1936, the Revised Organic Act of 1954 and subsequent amendments to the Revised Organic Act of 1954 in order to establish a Government for the People of the Virgin Islands. Notably, these Organic Act(s) represent the "evolving" unofficial Constitution of the U.S. Virgin Islands. A close perusal of these Acts however, clearly discloses that U.S. citizens and inhabitants *do not* enjoy

the same guarantees as U.S. citizens and inhabitants of the U.S. fifty (50) states.

In the case *sub judice*, the Defendant requested an evidentiary hearing on his Motion and Brief to Dismiss the Information With Prejudice Based on the Supremacy Clause Immunity. At the Friday, March 19, 2010 hearing, the Court asked the threshold question, to wit: where in the Revised Organic Act of 1954, as amended, has Congress made the "Supremacy Clause" applicable to the unincorporated Territory of the U.S. Virgin Islands? This inquiry was met with "deafening silence."

Undeniably, the "Supremacy Clause" is conspicuously omitted from any provision within the Revised Organic Act of 1954, as amended. Equally absent is Amendment X to the U.S. Constitution, commonly known as the "*States* Right" Amendment.

Significantly, the penultimate paragraph of Title 48 U.S.C. § 1561[6] states:

> The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States: article I, section 9, clause 2 and 3; article IV, section 1 and section 2, clause 1; article VI, clause 3, the first to ninth amendments inclusive; the thirteenth amendment; and the fifteenth and nineteenth amendments . . .

Since it is beyond cavil that the "Supremacy Clause," as set forth at U.S. CONST, art. VI, cl. 2, has not been expressly incorporated or included in the Revised Organic Act of 1954, as amended, the only avenue(s) that would permit its applicability to the unincorporated Territory of the U.S. Virgin Islands is if it were characterized as a "fundamental right" or if it were deemed applicable through some other recognized theory, case law or doctrine.

### 3. The "Supremacy Clause" Doctrine Is Not A Fundamental Right.

■ As an "unincorporated" territory of the United States, the Virgin Islands is subject to the "Territorial Incorporation" doctrine. *See* Revised

---

6 Also referred to as § 3 of the Revised Organic Act of 1954, as amended.

Organic Act of 1954, as amended, § 2(a); 48 U.S.C. § 1541(a), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at p. 77 (1995) (preceding V.I. Code Ann. tit. 1). The "Territorial Incorporation" doctrine classifies certain rights set out in the U.S. Constitution as "fundamental" because they are "inherent principles which are the basis of all free government, which cannot be with impunity transcended." *Downes v. Bidwell*, 182 U.S. 244, 290-91, 21 S. Ct. 770, 45 L. Ed. 1088 (1901). Therefore, if a right is considered "fundamental," Congress is prohibited from interfering with it *even in the unincorporated territories. Id. (See also Soto v. United States*, 273 F. 628, 633, 1 V.I. 536 (3d Cir. 1921)). The remaining rights are classified as "remedial," because they are considered "peculiar to our system or jurisprudence," rather than essential constitutional principles. *Soto*, 273 F. at 633. If the right is remedial, *Congress is not required* to secure it for U.S. citizens and other inhabitants of an unincorporated territory. *Id.* In fact, even if Congress grants a remedial right by *statute*, it has the power to repeal the legislation at any time. *See* U.S. CONST, art. IV, § 3.[7]

██ ██ In defining the phrase "fundamental right," the learned Thomas G. Walker, attorney and author has commented that:

> Because individual liberty lies at the core of the American constitutional system, more rights are protected under law in the United States than in other societies. Under such conditions, not all rights will be considered equal, but a hierarchy of valued liberties will emerge. *The freedoms that Americans deem the most important are denominated "fundamental rights".*

> The justices of the Supreme Court have defined fundamental rights to be those without which neither liberty nor justice would exist. They are freedoms essential to the concept of the ordered liberty, inherent in human nature, and consequently inalienable (*Palko v. Connecticut*, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937)). As such, these are rights that should prevail if in conflict with governmental authority or other, less valued, liberties.

---

[7] Congress almost completely repealed the Organic Act of 1936 with the Revised Organic Act of 1954, as amended. *See Virgo Corporation v. Paiewonsky*, 6 V.I. 256, 272-73, 384 F.2d 569, 576-77 (3rd Cir. 1967).

The specific rights that fall under the definition of fundamental rights have varied over the country's history. During the nation's first century, for example, freedom of contract and other rights of property were considered fundamental. With the decline of economic substantive due process, however, these property rights lost their primacy. In the twentieth century, personal liberties have taken on fundamental status. Through the process of selective incorporation, the Supreme Court has determined that *with only a few exceptions the provision of the Bill of Rights meet the definition of fundamental liberties and are constitutionally immune from encroachment by state and local governments as well as federal.* In recent years, the rights to privacy and protection against various forms of discrimination have increasingly been seen as fundamental.

Lee Epstein & Thomas G. Walker, *Constitutional Law For A Changing America: Rights. Liberties and Justice* Vol. 2 (5th ed. 2004).

■ Given the scope and meaning of "fundamental rights," it is clear that the "Supremacy Clause" to the U.S. Constitution does *not* satisfy the criteria.

### 4. Areas of Law Outside the Revised Organic Act of 1954, As Amended, And Fundamental Rights *May* Be Applicable To An Unincorporated Territory Of The United States.

Closely analogous to our case under consideration is *JDS Realty Corp.* v. *Government of the Virgin Islands*, 824 F.2d 256 (3rd Cir. 1987). In *J.D.S. Realty Corp.*, the "Commerce Clause" was challenged as having no application on the unincorporated Territory of the U.S. Virgin Islands since Congress did not explicitly extend the "Commerce Clause," as set forth at U.S. CONST. art. I, § 8 cl. 3. to the Territory through the Revised Organic Act of 1954, as amended. *J.D.S. Realty Corp.*, 824 F.2d at 259. Additionally, it was argued that the "Commerce Clause" did not involve a fundamental right. *Id.* at 259.

Acknowledging that it had not before ruled directly on the issue, *Id.* at 259, the court held that the unincorporated status of the U.S. Virgin Islands was of no consequence in terms of the affirmative power given to Congress to regulate interstate commerce and that the powers granted by the "Commerce Clause" *are implicit in the Territorial Clause,* Moreover, the court in *Polychrome Intern Corp.* v. *Krigger*, 5 F3d 1522, 1534, 29 V.I.

311 (3d Cir. 1993) held that "when territorial enactments affect interstate or foreign commerce — a subject over which Congress has supreme control — those enactments must be scrutinized under the Dormant Commerce Clause principles.[8] Any other conclusion would mean 'that an unincorporated territory would have more power over commerce than the states possess'."

While finding the reasoning in *Buscaglia v. Ballester*, 162 F2d 805 (1st Cir. 1947) unpersuasive, the court in *J.D.S. Realty Corp.*, acknowledged that *Buscaglia*, in stark contrast, ruled that the "Commerce Clause" *did not apply* to Puerto Rico, an unincorporated territory of the United States, since Congress had the comprehensive power to regulate territories under the "Territorial Clause" at U.S. CONST. art. IV, § 3. cl. 2. Hence, the power granted to Congress by the "Commerce Clause" was unnecessary when dealing with a territory. (*See also Jackson v. West Indian Company, Ltd.*, 944 F. Supp. 423, 35 V.I. 269 (D.V.I. 1996)).

■ Although the authorities are split as to the applicability of the "Commerce Clause" to an unincorporated territory of the United States, assuming *arguendo* that the *"Commerce Clause"* does apply within a U.S. Territory, the "Supremacy Clause" could not so qualify because it is: (1) not within the "Territorial Clause;" (2) absent from the "Dormant Commerce Clause" doctrine; and (3) not embedded in federal law that thoroughly dominates a field thereby precluding a reasonable inference that Congress left no room for territorial legislation to supplement the "Supremacy Clause."

## B. THE "SUPREMACY CLAUSE" DOCTRINE, AS SET FORTH AT U.S. CONST. ART. VI, CL. 2, IS *NOT* SYNONYMOUS WITH THE PRE-EMPTION PROVISION(S) UNDER THE REVISED ORGANIC ACT OF 1954, AS AMENDED.

■ According to esteemed scholar, lawyer and author, Seth P. Waxman, "[t]he extent to which local and state governments can sanction the conduct of federal officials implicates a bedrock structural principle-

---

[8] The "Dormant Commerce Clause," also known as the "Negative Commerce Clause," is a legal doctrine that courts in the United States have inferred from the "Commerce Clause" in Article I of the U.S. Constitution. According to the "Dormant Commerce Clause," Congress' grant of power implies a *negative converse* whereby a state is precluded from passing legislation that improperly burdens or discriminates against interstate commerce.

federalism." Seth P. Waxman, *Federalism, Law Enforcement, and the Supremacy Clause: The Strange Case of Ruby Ridge*, 51 U. KAN. L. REV. 141 (2002) (discussing the theory of "federalism"). In his article, Waxman appropriately defines the term "federalism" as "the principle that sovereign power *should not* vest in the single potentate or government, but rather should be dispersed across all levels of government." *Id.* at 142. This idea was shared by the U.S. Supreme Court in *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995) (Kennedy, J., concurring), when Justice Kennedy referred to the idea of "federalism" as "[S]plit[ting] the atom of sovereignty."

Notwithstanding the ability or lack thereof to define "federalism," the U.S. Constitution does not contain a "federalism clause." Seth P. Waxman, *Federalism, Law Enforcement, and the Supremacy Clause: The Strange Case of Ruby Ridge*, 51 U. KAN. L. REV. 141, 142 (2002) (discussing the absence of "federalism" in the U.S. Constitution). Moreover, case law has yet to establish clean "doctrinal borders" separating provisions such as the "Commerce" and "General Welfare" Clauses from the Eleventh and Fourteenth Amendments. *Id.* Significantly, the doctrinal border between the "Supremacy Clause" and Tenth Amendment "(State's Right Amendment") remains muddled and uncertain. The uncertainty surrounding doctrinal boundaries has naturally birthed many issues including but not limited to questions concerning "the extent to which *state governments can constrain 'federal' officials in the conduct of their federal duties*.' " *Id.* at 143.

■ Unlike the fifty (50) United States wherein state *and* federal government exists, the *unincorporated Territory of the U.S. Virgin Islands does not possess dual sovereignties*. Rather, the unincorporated U.S. Territory is a *single* sovereignty because it is subject to the ultimate control of Congress. *United States v. Government of the Virgin Islands*, 363 F.3d 276, 45 V.I. 764 (3d Cir. 2004). See also *United States v. Wheeler*, 435 U.S. 313, 319, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).

■ Moreover, the Court in *Jackson v. West Indian Company, Ltd.*, 944 F. Supp. 423, 35 V.I. 269 (1996), aptly pointed out that all powers vested within the Territory of the U.S. Virgin Islands are derived from Congress via the "Territorial Clause" and as such, *Congress* has plenary power over the unincorporated Territory of the U.S. Virgin Islands. Congress' sovereignty over the unincorporated Territory of the U.S. Virgin Islands is further recognized by the fact that Congress retains the

right to revise, alter, revoke and/or annul local legislation pursuant to the "Territorial Clause." So, despite Congress' intention to grant the unincorporated Territory of the U.S. Virgin Islands full power of self-determination and/or *autonomy similar to that of states,*[9] when it enacted the[10] Organic Act of 1936 and later, the Revised Organic Act of 1954 (including all subsequent amendments), Congress' intentions neither operated to divest its plenary power over the U.S. Territory nor changed the Territory's "unincorporated" status. Hence, even if the application of the Revised Organic Act of 1954, as amended, creates "trappings of a separate sovereignty," the fact still remains *that unless and until* there is an *adjustment in the status of the U.S. Virgin Islands,* what Congress gives to the unincorporated Territory of the U.S. Virgin Islands with one hand can be taken away with the other. As such, the powers bestowed upon the unincorporated Territory of the U.S. Virgin Islands by Congress can be "fleeting," "ephemeral," and/or subject to total divestment because the Territory of the U.S. Virgin Islands "marches to the beat of a single sovereign drum major" — Congress. Consequently, the Territory is essentially an instrumentality of the U.S. government. *Simms v. Simms,* 175 U.S. 162, 168, 20 S. Ct. 58, 60, 44 L. Ed. 115 (1899); *Binns v. United States,* 194 U.S. 486, 491-92, 24 S. Ct. 816, 817-18, 48 L. Ed. 1087 (1904).[11]

The "Supremacy Clause" as set forth at U.S. CONST, art. VI, cl. 2 states:

> *This Constitution,* and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby,

---

9 Congress may create a territorial government for an unincorporated territory and may confer upon it an autonomy similar to that of states. *Gromer v. Standard Dredging Co.,* 224 U.S. 362, 370, 32 S. Ct. 499[, 502], 56 L. Ed. 801 (1912), (*See also Harris v. Boreham,* 233 F.2d 110, 114-16, 3 V.I. 565 (3rd Cir. 1956)); *Jackson v. West Indian Co.,* 944 F. Supp. 423, 429 n.6, 35 V.I. 269 (D.V.I. 1996).

10 The phrase "republican form of government", as used in the text, refers to a government consisting of legislative, executive and judicial branches.

11 *See also Christianson v. King County,* 239 U.S. 356, 364-66, 36 S. Ct. 114, 117-18, 60 L. Ed. 327 (1915); *Hornbuckle v. Toombs,* 85 U.S. (18 Wall.) 648, 655-56, 21 L.Ed. 966 (1873) and *District of Columbia v. John R. Thompson Co.,* 346 U.S. 100, 106, 73 S. Ct. at 1010-11, 97 L. Ed. 1480 (1953).

any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. (emphasis provided)

 Application of the "Supremacy Clause" presupposes a "dual sovereignty" wherein the laws of one sovereignty, specifically *state law*, yields to the *U.S. Constitution* and federal laws and regulations under essentially three (3) recognized circumstances: (1) "express preemption," which arises when there is an explicit statutory command that *state* law be displaced, (*cf. Morales v. Trans World Airlines Inc.*, 504 U.S. 374, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992)); (2) "field preemption," which arises when federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (internal quotation omitted); and (3) "conflict preemption," which arises when a *state's* law makes it impossible to comply with *both state and federal* law or when the *state* law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941).[12]

 While pre-emption indeed exists in the U.S. Virgin Islands, it is *not* pursuant to the "Supremacy Clause" of the U.S. Constitution. Rather, pre-emption is applicable to the unincorporated Territory by virtue of the Revised Organic Act of 1954, as amended. Surprisingly, this premise has been supported by both counsel for the Defendant and counsel for the United States of America, as their respective briefs cite applicable case law.

With respect to counsel for the Defendant, she cites, *inter alia, The St. Thomas – St. John Hotel and Tourism Ass'n. v. Government of the Virgin Islands ex rel. V.I. Department of Labor*, 357 F.3d 297, 302, 45 V.I. 701 (3rd Cir. 2004). Interestingly, the court in that case *did not* hold that the "Supremacy Clause" applied to the unincorporated Territory of the U.S. Virgin Islands. Rather, the court in *The St. Thomas - St. John Hotel and Tourism Ass'n* case held that the *principles* of the "Supremacy Clause" apply to the laws of the U.S. Virgin Islands *through the Revised Organic*

---

[12] Quoting from the *People's Opposition To Defendant's Motion for Reconsideration of Motion to Dismiss Information With Prejudice Based on Supremacy Clause Immunity* at pp. 11-12.

*Act*, as amended, since the Act authorizes the U.S. Virgin Islands Legislature to enact territorial laws that are not inconsistent with the laws of the United States provided the latter *are expressly made applicable to the U.S. Virgin Islands.* 48 U.S.C. § 1574(a); *The St. Thomas − St. John Hotel and Tourism Ass'n.*, 357 F.3d at 302.[13]

Close scrutiny of the holding in *P.R. Consumer Affairs Dept. v. Isla Petroleum*, 485 U.S. 495, 499, 108 S. Ct. 1350, 99 L. Ed. 2d 582 (1988), the lead case relied upon by counsel for the United States of America, also fails to state that the "Supremacy Clause," set forth at U.S. CONST, art. VI, cl. 2, applies in an unincorporated territory. Instead, a direct quote from the holding states: "Although Puerto Rico has a unique status in our federal system, . . . the parties have assumed, and we agree, that *the test* for pre-emption of the law of Puerto Rico at issue here *is the same as the test* under the "Supremacy Clause," U.S. CONST., art. VI, cl. 2, for pre-emption of the law of a State."[14] *P.R. Consumer Affairs Dept.*, 485 U.S. at 499. In fact, reference to 48 U.S.C. § 734 — a provision of the Puerto Rico Revised Organic Act setting forth the Commonwealth's pre-emption doctrine — immediately follows the crucial excerpt.

In applying the holding in *P.R. Consumer Affairs Dept. v. Isla Petroleum*, 485 U.S. 495, 499, 108 S. Ct. 1350, 99 L. Ed. 2d 582 (1988) to the U.S. Virgin Islands, the pre-emption provisions/doctrines governing the Territory are set forth in the Revised Organic Act of 1954, as amended, § 3 and § 8(a). Specifically. § 3 reads:

> All laws enacted by Congress with respect to the Virgin Islands and all laws enacted by the territorial legislature of the Virgin Islands which are inconsistent with the provisions of this subsection are repealed to the extent of such inconsistency.

Similarly, § 8(a) provides:

> (a) The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands, but no law shall be enacted which would

---

[13] See Motion for Reconsideration of Motion to Dismiss Information With Prejudice Based On Supremacy Clause Immunity at pp. 2-3. (pages were not numbered).
[14] See Statement of Interest On Behalf of the United States in Support of Defendant Clarke's motion For Reconsideration at p. 3.

impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States, nor shall the lands or other property of nonresidents be taxed at a higher rate than the lands or other property of residents.

◼ Given the foregoing and the following "Pre-emption Chart," it is clear that the "Supremacy Clause" doctrine, as set forth at U.S. CONST., art. VI, cl. 2, is not synonymous with pre-emption under the Revised Organic Act of 1954, as amended, and the contrast is substantive and not merely a difference without a distinction.

## PRE-EMPTION CHART[15]

| SUPREMACY CLAUSE | TERRITORIAL CLAUSE |
|---|---|
| **Source of Authority**<br>Article VI, Clause 2 of the U.S. Constitution. | **Source of Authority**<br>Article IV, Section 3, Clause 2 of the U.S. Constitution. |
| **Applicable to:**<br>Fifty (50) States and *Incorporated* Territories. | **Applicable to:**<br>Organized but *Unincorporated* Territories of the U.S. such as the U.S. Virgin Islands. |
| **Supreme Law of the Land**<br>United States Constitution Laws of the United States and Treaties. | **Supreme Law of the Territory**<br>Revised Organic Act of 1954, as amended (cited at 48 U.S. 1541, et seq.) Subject to Treaties and other International Agreements. |

### HIERARCHY OF LAW

| DUAL SOVEREIGNTY | SINGLE SOVEREIGNTY |
|---|---|
| **FEDERAL** | **UNINCORPORATED TERRITORY**<br>(U.S. VIRGIN ISLANDS) |
| 1. United States Constitution - highest law in the federal and state systems and is not subject to any other laws nor can it be pre-empted. | 1. Revised Organic Act of 1954 - highest law in the Virgin Islands system but subject to treaties and other international agreements. |

---

[15] This Chart was prepared to visually capture the succinct difference between the Supremacy Clause of the United States *and* Territorial Pre-emption Provisions under the Revised Organic Act of 1954, as amended.

202

**2.** Congressional Laws/Enactments - can be pre-empted or declared unconstitutional and thus null and void if in conflict with the U.S. Constitution.

**STATE**

**1.** State Constitution - Can be pre-empted by the U.S. Constitution and Congressional Laws/ Enactments.

**2.** State and Local Laws - Can be held unconstitutional and/or pre-empted by both the U.S. Constitution, State Constitution, and Congressional Law/Enactment.

**2.** Congressional Laws *Expressly Applicable to the United States Virgin Islands* - can be pre-empted by the Revised Organic Act of 1954, as amended.

**3.** Territorial Laws (Powers Derived from Congress) - can be pre-empted by the Revised Organic Act of 1954 and Congressional Laws made applicable to the United States Virgin Islands.

## C. THE DEFENDANT HAS FAILED TO IDENTIFY A COMPETING BODY OF LAW TO TRIGGER THE APPLICABLE PRE-EMPTION PROVISION(S) UNDER THE REVISED ORGANIC ACT OF 1954, AS AMENDED.

 Since the "Supremacy Clause," as set forth at U.S. CONST, art. VI, cl. 2, is conspicuously omitted from the Revised Organic Act of 1954, as amended, not a "fundamental right," and not implied within the "Territorial Clause" like the "Dormant Commerce Clause," the inescapable conclusion is that the "Supremacy Clause" is *not* applicable to the unincorporated Territory of the U.S. Virgin Islands. However, *territorial pre-emption provisions*, as set forth in the Revised Organic Act of 1954, as amended, is applicable to the unincorporated Territory of the U.S. Virgin Islands. (*See* Title 48 U.S.C. §§ 1561, 1574(a)). Even if the Defendant attempts to utilize the correct territorial pre-emption provision(s), he has yet to identify any competing body of law that would trigger the application.

From almost the inception of this litigation, Defendant filed a Notice of Removal in the District Court of the Virgin Islands pursuant to 28 U.S.C. § 1442(a)(1) averring that he was performing within the scope of his duties as a federal officer or that he was performing under color of law as a federal officer when he allegedly shot and killed Sukow. Separate and apart from the Defendant erroneously citing 28 U.S.C. § 1442(a)(1) instead of § 23 of the Revised Organic Act of 1954, as amended and codified at 48 U.S.C. § 1613, as the authority for removing his case to the District Court of the Virgin Islands, upon filing the Notice of Removal,

203

the Superior Court was automatically and instantaneously divested of jurisdiction to entertain the prosecution.

Notwithstanding the transference of jurisdiction to the District Court of the Virgin Islands, the People of the Virgin Islands, through the V.I. Department of Justice, filed a motion for remand in the District Court, challenging any assertion by the Defendant that he was operating "within the scope" of his employment or under "color of office" as an agent of the United States, specifically, an ATF agent.

Following a full blown hearing on the motion for remand, the District Court of the Virgin Islands rejected the Defendant's contention that he was acting "within the scope" of his employment as an ATF agent and thereafter remanded the case to the Superior Court of the Virgin Islands. Unable to accept the Order of remand, the Defendant filed a motion to reconsider. At a hearing on the motion to reconsider. the Defendant essentially rehashed the same unsuccessful arguments raised in the original hearing for remand. As a result, the District Court did not disturb its prior ruling.

Not to be deterred, the Defendant, through a Motion to Dismiss With Prejudice Based on Supremacy Clause Immunity, attempted to have this Court address the same issue(s) raised before the District Court of the Virgin Islands. Specifically, the Defendant solicited this Court to determine whether he was operating within the scope of his employment or under "color of office" at the time Sukow was shot and killed.

For the Court to entertain the above issue, even under the appropriate territorial pre-emption provision(s), would be to "end run" or "run afoul" of the collateral estoppel/*res judicata* doctrines as well as the "law of the case" doctrine.[16] Absent consideration of that issue, there remains no identifiable competing body of law in which pre-emption can be applied. Accordingly, this matter must proceed to trial under state law and the Defendant is free to raise any *applicable* defense including but not limited to "justifiable homicide" under V.I. CODE ANN. tit. 14 § 927 and/or "self defense" under V.I. CODE. ANN. tit. 14 §§ §§ 41, 42, 43 and 293, etc.

---

[16] *See People of the Virgin Islands v. Rodney E. Miller, Sr.*, Case no. ST-08-CR-F-0348 at pp. 5-6 (filed May 4, 2010).

## IV. CONCLUSION

In view of the foregoing and after reconsideration, this Court finds no basis to disturb its initial ruling denying the Defendant's Motion to Dismiss the Information With Prejudice Based on Supremacy Clause Immunity since: (1) it was not clear error for this Court to rule that the "Supremacy Clause" set forth at U.S. CONST. art. VI, cl. 2 is inapplicable to the unincorporated Territory of the U.S. Virgin Islands; (2) the "Supremacy Clause" is not synonymous with the Territory's pre-emption provision(s) under the Revised Organic Act of 1954, as amended; and (3) the Defendant has totally neglected to identify any "competing" body of law that would trigger the application of the Territory's pre-emption provision(s). Accordingly, this Court's initial ruling will be **AFFIRMED**.