**THE PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**PREDRAG MILOSAVLJEVIC, Defendant**

Criminal No. ST-09-CR-582

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

September 16, 2010

50

51

CHRISTINE THOMAS, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *For the Plaintiff.*

JOSEPH A. DIRUZZO III, ESQ., Law Office of Marjorie Rawls Roberts, P.C., St. Thomas, USVI, *For the Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(September 16, 2010)

**THIS MATTER** comes before the Court on Defendant's June 25, 2010 Motion to Dismiss for Violation of the Vienna Convention on Consular Relations. The People of the Virgin Islands ("People") are represented in this matter by Assistant Attorney General Christine Thomas, Esq. Defendant Predrag Milosavljevic ("Milosavljevic") is represented in this action by Joseph A. DiRuzzo, Esq., of the Law Office of Marjorie Roberts, P.C.

## FACTS

Milosavljevic moves the Court to dismiss the People's criminal action against him because, he states, the Government of the Virgin Islands

violated his rights under the Vienna Convention on Consular Relations by failing to advise him of his right to consular assistance and by failing to notify his consulate that he had been arrested.

Milosavljevic is a national of the Republic of Serbia. Pursuant to a temporary work visa, he was employed at Magens Point Resort on St. Thomas, U.S. Virgin Islands. On November 18, 2009, he was arrested on charges of forgery, obtaining money by false pretenses and embezzlement by employees. V.I. CODE ANN. tit. 14, §§ 1093, 834(2), 791(1), 791(2) (1996). According to Milosavljevic's supplemental exhibit, on November 21, 2009, the Consulate; General in New York was notified by Milosavljevic's friend that Milosavljevic was detained in the Virgin Islands. Milosavljevic does not state in his Motion whether the Government of the Virgin Islands took any steps to notify the Consulate General or whether the Government advised Milosavljevic of his right to seek consular assistance. The People do not allege that either occurred.

## DISCUSSION

Milosavljevic moves the Court to dismiss the Information against him as a remedy for the Government's alleged violation of his right to consular assistance. The Vienna Convention on Consular Relations ("Vienna Convention" or "Convention") was drafted to ensure "the development of friendly relations among nations." Apr. 24, 1963, 21 U.S.T. 77, 79, T.I.A.S. No. 6820. Article 36 of that Convention requires that, upon request by a detained defendant, the "competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of the defendant's detention. It also requires that the authorities advise the detained defendant of his rights to consular notification. In addition, consular officers are provided the right to visit the detained defendant and "converse and correspond with him and to arrange for his legal representation." Art. 36(1), *id.* at 101. Both the United States of America and the Republic of Serbia are signatories to the Convention.

### I. The Government of the Virgin Islands is Bound by the Vienna Convention on Consular Relations.

■ Although not raised by the parties, the Court must first determine whether the Government of the Virgin Islands is bound by the Vienna Convention on Consular Relations. By operation of the Supremacy

Clause of the U.S. Constitution, treaties constitute the "supreme Law of the Land." U.S. CONST. art. IV, § 3, cl. 2. There is no doubt that this clause binds the fifty (50) states of the United States, forbidding them from entering into their own treaties with foreign sovereigns. There has recently been raised some doubt as to whether the Supremacy Clause applies to the Virgin Islands.[1] The Court finds that it does.

 It is beyond question that not all provisions of the U.S. Constitution apply with equal force to the Virgin Islands and other unincorporated territories as they do to the fifty (50) states. *See The Insular Cases*.[2] Those cases establishing the territorial incorporation doctrine are based on the premise that, because the federal government has the power to acquire territories, it has a great deal of power to determine how those territories are governed.[3] *See, e.g., Downes v. Bidwell*, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (1901); *Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 42, 10 S. Ct. 792, 34 L. Ed. 478 (1890) ("The power of Congress over the territories of the United States is general and plenary, arising from and incidental to the right to acquire the territory itself and from the power given by the Constitution to make all needful rules and regulations respecting the territory or other property belonging to the United States. It would be absurd to hold that the United States has power to acquire territory, and no power to govern it."). The territorial incorporation doctrine makes clear that this broad power is not

---

[1] *People v. Clarke*, 53 V.I. 183 (Super. Ct. 2010).

[2] Nine Supreme Court cases decided in 1901 constitute the main *Insular Cases*. *De Lima v. Bidwell*, 182 U.S. 1, 21 S. Ct. 743, 45 L. Ed. 1041 (1901); *Goetze v. United States*, 182 U.S. 221, 21 S. Ct. 742, 45 L. Ed. 1065 (1901); *Dooley v. United States*, 182 U.S. 222, 21 S. Ct. 762, 45 L. Ed. 1074 (1901); *Armstrong v. United States*, 182 U.S. 243, 21 S. Ct. 827, 45 L. Ed. 1086 (1901); *Downes v. Bidwell*, 182 U.S. 244, 21 S. Ct. 770, 45 L. Ed. 1088 (1901); *Huus v. New York & Porto Rico Steamship Co.*, 182 U.S. 392, 21 S. Ct. 827, 45 L. Ed. 1146 (1901); *Dooley v. United States*, 183 U.S. 151, 22 S. Ct. 62, 46 L. Ed. 128 (1901) (Dooley II); *The Diamond Rings*, 183 U.S. 176, 22 S. Ct. 59, 46 L. Ed. 138 (1901).

[3] The Hon. Thomas Moore of the District Court of the Virgin Islands observed that the founding premise of the doctrine was one of "racism and cultural superiority." *United States v. Pollard*, 209 F. Supp. 2d 525, 540-41 (D.V.1. 2002) (citing various cases which contemplate the difficulty of applying "Anglo-Saxon principles" to "territory peopled with savages") (*reversed on other grounds by United States v Pollard*, 326 F.3d 397, 45 V.I. 672 (3d Cir. 2003)). The Judge criticized "the Supreme Court and courts of [appeal]" for continuing, "in knee-jerk fashion, to reiterate and apply this wholly judge-crafted and obviously race-based doctrine to justify the unequal treatment of citizens based solely upon where they live in the United States." *Id.* at 543.

automatically limited by each and every guarantee of the Bill of Rights; instead, apart from certain fundamental rights,[4] many provisions of the Constitution apply only when Congress sees fit to enact legislation to expressly apply them. For example, in the Revised Organic Act, Congress expressly applied certain of the Constitution's guarantees to the Virgin Islands. Revised Organic Act of 1953 § 3; 48 U.S.C. § 1561 (2006).

▮ It is important to reflect upon the reasoning behind the development of the territorial incorporation doctrine to determine if the Supremacy Clause applies in the Virgin Islands. The Supreme Court developed the doctrine not to limit the powers of the federal government in the territories, but rather to see to it that, aside from exceptions regarding fundamental rights, Congress's power to govern the territories remained unlimited. *See, e.g., Bidwell,* 182 U.S. at 285 ("[W]e find the Constitution speaking only to states, except in the territorial clause, which is absolute in its terms, and suggestive of no limitations upon the power of Congress in dealing with them."); *Id.* at 286-87 ("[N]o construction of the Constitution should be adopted which would prevent Congress from considering each case upon its merits . . . A false step at this time might be fatal to the development of what Chief Justice Marshall called the American empire . . . If those possessions are inhabited by alien races, differing from us in religion, customs, laws, methods of taxation, and modes of thought, the administration of government and justice, according to Anglo-Saxon principles, may for a time be impossible; and the question at once arises whether large concessions ought not be made for a time . . . We decline to hold that there is anything in the Constitution to forbid such an action."). Indeed, in *Balzac v. Puerto Rico,* the Supreme Court emphasized that the question is not *whether* the Constitution is in force in the territories, but "which one of its provisions where applicable *by way of limitation upon the exercise of executive and legislative power* in dealing with new conditions and requirements." *Balzac v. Porto Rico,* 258 U.S. 298, 312, 42 S. Ct. 343, 66 L. Ed. 627 (1922) (emphasis added). Given this justification behind the doctrine, to employ the doctrine of territorial incorporation to *limit* the powers of the federal government

---

[4] *See Bidwell,* 182 U.S. at 280 ("There are certain principles of natural justice inherent in the Anglo-Saxon character, which need no expression in constitutions or statutes to give them effect or to secure dependencies against legislation manifestly hostile to their real interest.").

would be to vitiate the very purpose behind the doctrine's creation.[5] The Supreme Court could not have intended such an absurd result. Therefore, the Court finds that the Supremacy Clause does apply with full force and effect in the Virgin Islands.

■ Even if the Supremacy Clause did not apply, it is clear that the Virgin Islands is bound by treaties entered into by the federal government. Section 8 of the Revised Organic Act states that "no law shall be enacted which would impair rights existing or arising by virtue of any treaty or international agreement entered into by the United States." Revised Organic Act of 1954 § 8; 48 U.S.C. § 1574(a). *See also Bidwell*, 182 U.S. at 263 ("[I]n dealing with foreign sovereignties, the term 'United States' has a broader meaning than when used in the Constitution, and includes all territories subject to the jurisdiction of the Federal government, wherever located. . . . It would be absurd to hold that the territories, which are much less independent than the states, and are under the direct control and tutelage of the general government, possess a power in this particular which is thus expressly forbidden to the states.").

## II. The Vienna Convention on Consular Relations Creates Individually Enforceable Rights.

■ The Vienna Convention, like all treaties, is a compact between states. *Head Money Cases*, 112 U.S. 580, 598, 5 S. Ct. 247, 28 L. Ed. 798 (1884) ("A treaty is primarily a compact between independent nations."); *United States v. Superville*, 40 F. Supp. 2d 672, 676, 40 V.I. 457 (D.V.I. 1999) ("[T]reaties are agreements between sovereign nations"). This tautology does not, however, foreclose the possibility that the Convention effects a change in the rights of individuals in signatory states.[6] In fact, in two separate cases in 1999, the District Court of the Virgin Islands held that the, Convention does create rights enforceable by individuals before

---

[5] Similarly, the Third Circuit determined that, although the Commerce Clause did not implicate fundamental rights and was not expressly incorporated by the Revised Organic Act, its principles nonetheless applied to the Virgin Islands because a ruling to the contrary when create an absurd result. *Polychrome Intern Corp. v. Krigger*, 5 F.3d 1522, 1534, 29 V.I. 311 (3d Cir. 1993).

[6] It is well established that treaties can create individually enforceable rights under some circumstances. *See, e.g., United States v. Alvarez-Machain*, 504 U.S. 655, 667-68, 112 S. Ct. 2188, 119 L. Ed. 2d 441 (1992) (acknowledging that a defendant brought to the United States for trial may not be prosecuted when it would violate the terms of the extradition treaty).

domestic courts. *Superville*, 40 F. Supp. 2d at 678; *United States v. Briscoe*, 69 F. Supp. 2d 738, 745, 41 V.I. 446 (D.V.I. App. Div. 1999) ("[T]he Vienna Convention confers a private right of consular notification.").

In *Superville*, the District Court considered the Convention's text, the drafters' inventions, and the "prevailing view among federal agencies and courts" and concluded that individuals have a right to consular notification and, therefore, have standing to object to a violation of those rights. *Superville*, 40 F. Supp. 2d at 678. Later that year in *Briscoe*, the Appellate Division of the District Court — whose decisions are binding on this Court — found that in the intervening time after *Superville* was decided, "courts have unanimously held that the Vienna Convention created a personal right to consular notification." *Briscoe*, 69 F. Supp. 2d at 745.

After *Superville* and *Briscoe*, some courts have weighed in to decide that the Convention does not create individually enforceable rights. *See* Ann K. Wooster, Annotation, *Construction and Application of Vienna Convention on Consular Relations (VCCR), Requiring that Foreign Consulate be Notified When One of its Nationals is Arrested*, 175 A.L.R. Fed. 243, § 4(b) (2002) (collecting cases) (updated weekly). For example, in *Jimenez-Nava*, the Fifth Circuit Court of Appeals applied the presumption that treaties are generally enforced through state action, rather than individual claims in the judicial system, and decided that the Convention did not confer individual rights. *United States v. Jimenez-Nava*, 243 F.3d 192 (5th Cir. 2001).

Before *Jimenez-Nava*, no federal circuit court had yet decided whether the Convention created enforceable individual rights for criminal defendants to assert. *Jimenez-Nava*, 243 F.3d at 196. In the years since the decision was issued, however, the courts of appeal of the Fifth, Sixth, Ninth and Eleventh Circuits have held that the Convention does not create such rights. *See, e.g., Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004), cert. granted, 543 U.S. 1032, 125 S. Ct. 686, 160 L. Ed. 2d 518 (2004), and cert. dismissed as improvidently granted, 544 U.S. 916 (2005); *United States v. Emuegbunam*, 268 F.3d 377, 391-94 (6th Cir. 2001); *Cornjeo v. County of San Diego*, 504 F.3d 853, 861-64 (9th Cir. 2007) *Gandara v. Bennett*, 528 F.3d 823, 826-29 (11th Cir. 2008). On the other hand, the Seventh Circuit found that it does. *Jogi v. Voges*, 480 F.3d 822, 831-35 (7th Cir. 2007). Other courts of appeal have not definitively

decided the issue in the context of a criminal defendant asserting a defense or claim. *See, e.g., United States v. Santos*, 235 F.3d 1105, 1109 (8th Cir. 2000); *United States v. Li*, 206 F.3d 56, 66-68 (1st Cir. 2000) (*en banc*) (Selya & Boudin, JJ., concurring) (concluding Article 36 does not create enforceable rights); *Li*, 206 F.3d at 68-76 (Torruella, J., concurring in part and dissenting in part) (determining that it does create an individually enforceable right); *United States v. de la Pava*, 268 F.3d 157 (2d Cir. 2001) (holding that Article 36 did not create "fundamental rights" and could not serve as the basis for dismissal of an indictment, but not definitively deciding whether it otherwise could create non-fundamental, individually enforceable rights).

■ ■ As is clear from the discussion above, there is no definitive answer in the Convention's jurisprudence to the question of what effect, if any, the Convention has on the rights of a detained criminal defendant. A number of courts have found that the Convention does not create individually enforceable rights. Importantly, though, the Supreme Court of the United States, the Third Circuit, and the Supreme Court of the Virgin Islands have yet to decide the issue. *See, e.g., Medellin v. Texas*, 552 U.S. 491, 506 n.4, 128 S. Ct. 1346, 170 L. Ed. 2d 190 (2008) (assuming, *without deciding*, that Article 36 creates individually enforceable rights). Only one court whose decisions are binding on this Court has decided the question: the Appellate Division of the District Court of the Virgin Islands. Therefore, although the courts of other circuits may come to a different conclusion, and although an appellate court in this circuit considering the issue today might decide differently, the Court is bound to follow the binding precedent set out in 1999 in *Briscoe. See, e.g., Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1240 n.15 (11th Cir. 2002) (stating the well-settled rule that although a trial court should "respect and carefully weigh the views of other circuits," *United States v. Stone*, 9 F.3d 934, 941 (11th Cir. 1993), it is bound by the decisions of the appellate courts within its own circuit). Consequently, this Court holds that the Vienna Convention creates individually enforceable rights, the violation of which defendants may assert in criminal cases against them.

## III. The Government of the Virgin Islands Violated the Vienna Convention.

Milosavljevic has failed to set out in detail in his Motion to Dismiss exactly what his custodians did or did not say to him regarding his rights

under the Convention, or what they did or did not do to notify the Serbian consulate. The People's Opposition, on the other hand, is a bit more enlightening. Milosavljevic was arrested on November 18, 2009. The People concede that the Government neither notified Milosavljevic of his rights under the Convention, nor did it, "without delay," contact the Serbian consulate to inform it that one of its nationals was detained by the Virgin Islands Government. Instead, the Consulate was notified on November 21, 2009, of Milosavljevic's arrest by his "close friend." (Ex. C to Pl.'s Opp'n to Mot. to Dismiss.)

 The language of the Convention places the responsibility for notification and advisement on "the competent authorities" of the jurisdiction in which the person is arrested or detained. Art. 36(1). In *Briscoe*, the Court found a Convention violation when the United States did notify the consulate, but only three weeks after the defendant's arrest. *Briscoe*, 69 F. Supp. 2d at 746. Here, there is no evidence that any of the government officers responsible for Milosavljevic's arrest or detainment either contacted the Consulate on his behalf or advised him of his right to consular representation. Consequently, the Virgin Islands Government, as his custodian, violated Milosavljevic's rights under the Convention.

## IV. Milosavljevic Has Failed to Show Prejudice, and His Motion to Dismiss Must, Therefore, Be Denied.

According to binding precedent, Milosavljevic possessed individually enforceable rights under the Vienna Convention, which rights were violated by the Virgin Islands Government. However, to succeed on his Motion to Dismiss, Milosavljevic must show that he was prejudiced by this violation.

 *Briscoe* makes it clear that Milosavljevic's claim cannot survive unless he shows some detriment from the Government's omissions. In *Briscoe*, the Appellate Division stated that "[a] defendant must prove prejudice, whether the violation was of the Vienna Convention itself . . . or of INS or DOJ regulations." *Briscoe*, 69 F. Supp. 2d at 746-47. The Appellate Division thereafter adopted the Ninth Circuit's definition of prejudice in the context of the Vienna Convention:

> The defendant [has] the burden of establishing prejudice by producing evidence that '1) he did not know of his right; 2) he would have availed himself of the right had he known of it; and 3) there was a likelihood

that the contact [with the consul] would have resulted in assistance to him.'

*Id.* at 747 (quoting *United States v. Villa-Fabela*, 882 F.2d 434, 440 (9th Cir. 1989), *overruled on other grounds by United States v. Proa-Tovar*, 975 F.2d 592, 594-95 (9th Cir. 1992) (*en banc*)).

■ In this case, Milosavljevic argues that he need not show prejudice. However, as is clear from *Briscoe*, this contention is misplaced. Perhaps because of his position that he need not show prejudice to succeed on his Motion, Milosavljevic has failed to address any of the factors required to make his showing of prejudice. Consequently, the Court cannot find that Milosavljevic was prejudiced by the Government's violation of his Vienna Convention rights and, therefore, his Motion to Dismiss will be denied.

## CONCLUSION

The Vienna Convention on Consular Relations vested Predrag Milosavljevic with individually enforceable rights. Those rights were violated when the Government of the Virgin Islands failed to timely notify his consulate of his arrest and detention. However, because Milosavljevic has not made a showing of any prejudice resulting from that violation, the Court will not dismiss the People's criminal case against him.