

**FILED**
December 28, 2020
SX-2005-CV-00739
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JACQUELINE SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | SX-05-CV-739 |
| | ) | |
| v. | ) | |
| | ) | ACTION FOR DAMAGES |
| UNITED CORPORATION d/b/a | ) | (JURY) |
| PLAZA EXTRA(WEST) | ) | |
| | ) | |
| Defendant. | ) | **2020 VI Super 105** |

### MEMORANDUM OPINION and ORDER

¶ 1    THIS MATTER is before the Court on Defendant United Corporation's Motion for Summary Judgment with Brief in Support and Statement of Undisputed Material Facts (SOF), filed February 1, 2016; Plaintiff Jacqueline Santiago's Response in Opposition, with Response to Defendants' SOF and Counter-Statement of Material Facts (CSOF), filed April 16, 2016; and Defendant's Reply to Plaintiff's Response in Opposition, Reply to Plaintiff's Response to SOF, and Response to Plaintiff's CSOF, filed May 20, 2016. For the reasons that follow, Defendant's Motion will be GRANTED in part and DENIED in part.

### BACKGROUND

¶ 2    This matter arises from United's termination of Plaintiff from her position as deli manager at Plaza West supermarket in St. Croix. Santiago had been hired by United in 1999 at an hourly rate of $5.15 to work in the meat department at Plaza East, United's sister store to Plaza West, where she was subsequently transferred to be a meat department employee. CSOF ¶¶ 1-2.[1] After three years in the meat department, Plaintiff was assigned to the deli department and told she would be a manager, although she claims "it was just a title," and "I was like a regular employee" under the direction of assistant store manager Hisham Hamed. She was still paid by the hour (increased to $7.00 per hour) and punched in and out on the time clock. *Id.* ¶¶ 26-28. Plaintiff was not trained as a manager, and her co-workers did not refer to her as manager. *Id.* ¶¶ 16, 4-7.

¶ 3    In that position, Santiago cooked, made sandwiches, baked bread and cakes and made coffee, among other tasks. *Id.* ¶ 8. She could make recommendations, but Plaintiff had no authority to hire, fire or discipline an employee, all such decisions reserved for Hamed and other managers. *Id.* ¶¶ 18-

---

[1] Citations throughout to SOF and CSOF paragraphs include exhibits referenced in those paragraphs.

25. Every week, Plaintiff determined whether any deli employees needed a day off and then, using pre-determined hours and shifts, delivered the schedule to Hamed for review and approval before printing and return for posting. *Id.* ¶ 12. If any of the 20 or 21 deli employees was late or failed to show up as scheduled, Santiago was required to report to Hamed and then seek to fill the vacancy. *Id.* ¶¶ 13-15. Bakery workers monitored the need for bread and bakery ingredients and advised Hamed who did the ordering. Plaintiff took regular inventory of the deli goods, checked off items on an inventory list and delivered that to Hamed for ordering. *Id.* ¶¶ 9-10. Santiago and her deli co-workers removed expired food items from the shelves and put them in the walk-in cooler where Hamed decided what to do with them. *Id.* ¶ 11.

¶ 4 On Sunday, September 18, 2005, Plaintiff reported to work at Plaza West for a shift scheduled from 6 a.m. to 12 p.m.[2] *Id.* ¶¶ 32-33. During her shift, the intercom summoned the deli manager to answer a phone call from Abdelkrim Boucenna, manager of Plaza East. Boucenna requested that Plaintiff come to Plaza East to fill in for one of his cooks who did not come to work that day, a request that was not unusual as the sister stores occasionally borrowed employees from each other. *Id.* ¶ 37. Plaintiff responded that she was willing to assist, and Boucenna instructed her to get permission from Mario Ramos, the only Plaza West manager present at the time. Plaintiff sought and received such permission, which was required for her to leave the store. *Id.* ¶¶ 38-42.

¶ 5 Plaintiff Santiago then informed deli employees Marva Sampson and Vanessa Gonzalez that she had been called to cook at Plaza East, telling Sampson that she was in charge and asking Gonzalez to look after the shelves and keep them stocked. *Id.* ¶¶ 43-44. Plaintiff confirmed with Boucenna, punched out at Plaza West and traveled to Plaza East, where she worked until 12:00 p.m., the scheduled ending time for her shift at Plaza West. Before leaving Plaza East, Santiago asked Boucenna for a note that he provided reflecting that she had worked at Plaza East until 12:00 p.m. *Id.* ¶¶ 45-47.

¶ 6 Following his arrival at Plaza West that day at approximately 11:30 a.m., Hamed conducted a walk-through of the store and noticed that bread, salads and creme cakes were needed on the shelves in the deli department. SOF ¶ 12. Hamed asked the deli workers if the shelves had been filled that day, and they said no. CSOF ¶ 48.

---

[2] Plaintiff states that she was not scheduled to work that day but was called to fill in for a baker who had taken the day off and, because there was no other deli manager, she was acting in both jobs that day. CSOF ¶ 31.

¶ 7    Plaintiff did not work the following day, September 19, 2005, her day off. *Id.* ¶ 54. On that day, Hamed prepared several "write-ups, warning notices to Jacqueline," all about the events of the previous day, accusing Santiago of blatant neglect of her duties as deli manager, leaving the store with work undone and without leaving instructions for her subordinates. *Id.* ¶ 55.

¶ 8    When Plaintiff arrived at work on September 20, 2005, Hamed called her to the office and asked her to explain the events of September 18, 2005. That conversation concluded with Hamed informing Santiago that he and co-manager Maher "Mike" Yusuf had decided that they no longer wanted her working at Plaza Extra and that she should punch out and leave the store. *Id.* ¶ 66.

¶ 9    Later, an individual whose identity Santiago does not remember informed her that on the day Santiago was dismissed, Hamed, Yusuf, and Boucenna were outside Plaza East "laughing and talking about how they discharged me." *Id.* ¶ 68. Specifically, Plaintiff claims that United's employees made false statements about her in the presence of others, lying about what work she had completed, that she had left Plaza West for Plaza East without permission, and that she was a poor manager. *Id.* ¶ 69, Plaintiff's Opp. at 35.

¶ 10    Plaintiff filed her Complaint in this action on November 29, 2005, consisting of four counts alleging wrongful discharge (Count I), defamation (Count II), intentional and negligent infliction of emotional distress (Count III)[3] and entitlement to an award of punitive damages (Count IV).[4] Santiago claims that the actions of United directly and proximately resulted in her loss of income, loss of earning capacity, loss of reputation, mental anguish, physical injuries, medical expenses, pain and suffering and loss of enjoyment of life, all of which were expected to continue into the future. Complaint ¶ 38.

¶ 11    By its Motion, United contends that it is entitled to summary judgment on Santiago's wrongful discharge claim because as "deli manager," she was a supervisor and the National Labor Relations Act has preempted the Virgin Islands Wrongful Discharge Act as to such employees, citing various

---

[3] In response to United's Motion, Plaintiff has withdrawn her claim for intentional and negligent infliction of emotional distress, conceding that those claims are not viable in an employment context. *See* Plaintiff's Opp. at 1, n.1. Accordingly, the Motion will be granted as to Count III.

[4] However, "a request for punitive damages is not an independent cause of action," *Bonelli v. Gov't of the Virgin Islands*, 67 V.I. 714, 726 (V.I. 2017) (citing *Molloy v. Independence Blue Cross*, 56 V.I. 155, 176 n.5 (V.I. 2012), and Count IV of the Complaint is not separately addressed in United's Motion or herein. An action seeking compensatory and punitive damages is specifically permitted under the Virgin Islands Wrongful Discharge Act. *See* 24 V.I.C. § 79.

Virgin Islands cases. Further, Santiago first presented administrative claims to the Department of Labor wherein she testified, and the hearing examiner found, that Santiago was a supervisor, judicially estopping Santiago from relitigating that issue in this action.[5] United also argues as to the defamation claim that there is no admissible evidence in the record that Plaza West published any false and defamatory statements concerning Santiago. Lastly, United argues that at least a portion of Santiago's damages claim should be denied as she has presented no competent evidence sufficient to permit a finding that she suffered various medical and psychological problems as a result of the termination.

## LEGAL STANDARD

¶ 12    In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). A dispute regarding a particular factual issue, material to the claim presented, is genuine if a reasonable trier of fact could decide that issue in favor of the non-moving party. *Id.* at 391-92. "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact," and that judgment is appropriate as a matter of law. *Id.* at 379-80.

¶ 13    Reviewing Defendant's Motion, the Court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any

---

[5] Plaintiff filed for unemployment benefits that were initially denied on the adjudicator's determination of misconduct, reversed by the administrative law judge's decision finding of no misconduct and eligibility for unemployment benefits. CSOF, Ex. D, *Santiago v. Plaza Extra West* (App. No. 006-02-06). Docket No. 580064838 (VI E.S.A Nov. 10, 2005). ALJ Austin found that Plaza West failed to establish –

> by neither the physical nor, the testimonial evidence that the Claimant engaged in a willful or deliberate act. The Claimant left the store and went to work at another sister store upon the request of a person to whom she believed possessed the full authority as a manager to ask her to come and assist him and help the store. *Id.*

The ALJ also found no evidence that Plaintiff "engaged in an act of insubordination" and that "contrary to the warning notice, the corroborated testimony reveals that before departing the store that morning, the [Plaintiff] left instructions with staff." *Id.* United filed its Petition for Writ of Judicial Review (SX-05-CV-880) on December 30, 2005, which remains pending.

Santiago subsequently filed a separate complaint with the Department of Labor seeking relief under the WDA. That claim was dismissed by September 12, 2006 Memorandum Opinion and Order wherein the hearing examiner found that because she claimed as deli manager to supervise twenty employees, the Department of Labor lacked subject matter jurisdiction over Santiago's WDA claim, which was preempted by § 14(a) of the NLRA. SOF ¶ 38, Ex. F, *Santiago v. Plaza Extra West*, (WD-004-06-STX).

conflicting allegations, if properly supported by the record, are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party does carry its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013) (citations omitted). In responding to the movant's evidence showing the existence of no genuine issue of material fact, "the nonmoving party may not rest on its allegations alone but must present actual evidence, amounting to more than a scintilla, showing a genuine issue for trial," regarding such disputed fact. *Perez*, 59 V.I. at 527-28.

¶ 14 "A party asserting that a fact... is genuinely disputed must... support the assertion by: (i) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (ii) showing that the materials cited do not establish the absence... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations and must present actual evidence showing a genuine issue for trial." *Machado*, 61 V.I. at 379, quoting *Williams*, 50 V.I. at 194. To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the cause of action. *See Perez*, 59 V.I. at 528.

## DISCUSSION

### Judicial Estoppel

¶15 Virgin Islands cases have consistently recognized that the Virgin Islands Wrongful Discharge Act (24 V.I.C. §§ 76-79) "does not apply to supervisory employees as it is preempted as to such employees by the National Labor Relations Act," (29 U.S.C. §§ 151-169). *Mina v. Hotel on the Cay Time Sharing Ass'n*, 62 V.I. 220, 232 (V.I. Super. 2015) (citing *St. Thomas-St. John Hotel & Tourism*

*Assoc. v. Gov't of V.I.,* 45 V.I. 701, 707 (3d Cir. 2004)). United argues here that because Plaintiff testified in the Virgin Islands Department of Labor Employment Security Agency hearing that she "supervised 20 deli employees," she is therefore judicially estopped from asserting a contrary position in this case.

¶16     The Virgin Islands Supreme Court has recognized that "judicial estoppel is a common-law doctrine that prevents a party from adopting inconsistent positions when doing so would constitute a fraud on the court." *Sarauw v. Fawkes,* 66 V.I. 253, 260 (V.I. 2017). "Judicial estoppel requires a determination involving whether a party is, in fact, asserting inconsistent positions and rather than adopt a strict multi-factor test, the consideration of any other factors should be applied on a case by case basis.'" *Id.* at 261 (citation and internal quotations omitted).

¶ 17     In *Sarauw,* the Supreme Court conducted a thorough *Banks* analysis to conclude that in the Virgin Islands "the judicial estoppel doctrine will preclude a party from asserting a position on a question of fact or a mixed question of law and fact that is inconsistent with a position taken by that party in a previous judicial proceeding if the totality of the circumstances compels such a result. In conducting this inquiry, a court must focus on the impact that allowing the inconsistent claims would have on the judicial process, which may include considering the extent of the inconsistency (including any reasonable explanations that would harmonize both positions), whether the party has received an unfair advantage or benefit from asserting the inconsistent claims, and whether another court has already relied on the claim made in the first proceeding. However, like the United States Supreme Court, we emphasize that these factors are neither exclusive nor exhaustive, and that a court may consider any relevant factor in light of the particular situation before it." *Id.* at 264-65.

¶18     Santiago testified that at any given time she supervised four people in Plaza West's deli area, over which she was titled manager. Because the same four people were not always present, she estimated that over the course of a month, she supervised a total of 20 persons. SOF ¶ 27. Yet, Plaintiff contends here that she is not a "supervisor" as defined in the NLRA, and that her prior testimony is not "clearly inconsistent" and does not judicially estop her from espousing her present position. In the administrative proceedings regarding unemployment benefits, Santiago claimed that she never described herself as a supervisor under any definition, but simply explained the particulars of her position, what was expected of her, and the circumstances of her termination in the context of the ALJ's determination of whether she had engaged in misconduct sufficient to deny her those benefits.

¶19    In focusing on the impact that allowing the facially inconsistent claims would have on the judicial process, we consider whether there are reasonable explanations that would harmonize both positions. Here, it is clear here that Santiago's positions in the administrative proceeding and in this action can exist in harmony. To whatever extent Santiago's position as "deli manager" might be deemed a supervisory position, on the date of the incident she responded to the request of a superior to work at United's sister store to fill in as a non-supervisory baker.

¶20    Also, Plaintiff did not receive any "unfair advantage or benefit" from her testimony in the Department of Labor proceeding. In fact, it would have been in her interest to testify before the administrative law judge that she had no supervisory responsibility and, therefore, no obligation to instruct the other deli employees when she left the store to work at Plaza East. The record does not reflect that the ALJ's finding of no misconduct by Santiago was made in reliance on her statement that she supervised deli employees. In fact, the ALJ found that Santiago did instruct deli employees before she left, and that she left at the request of the sister store's manager whom she understood had full authority to request her assistance.

¶21    The totality of the circumstances, including the fact that the issue of the definition of a supervisor under the NLRA was wholly irrelevant and not considered in the administrative proceeding, does not compel the result that Santiago is judicially estopped in this action from pursuing her Wrongful Discharge Act claim, refuting that she was a supervisor under the NLRA definition and asserting that her WDA claim is not preempted by the federal law.

**Wrongful Discharge Act**

¶22    Plaintiff alleges that the actions of United in terminating her employment were not based upon any of the nine justifiable reasons for discharge under 24 V.I.C. § 76(a) and therefore constitute a violation of the Wrongful Discharge Act and entitle her to an award of damages. For a claim under the WDA, Plaintiff bears only the "burden of pleading—and ultimately proving—that [s]he was discharged, while the permissible grounds for discharge set forth in sections 76(a)(1)-(9) and 76(c) were affirmative defenses that the defendant would be required to plead and prove." *Rennie v. Hess Oil Virgin Islands Corporation,* 62 V.I. 529, 543 (V.I. 2015).

¶23    Here, by its Motion, United claims that Santiago was a supervisory employee and, as such, she may not present an action for statutory wrongful discharge. As noted above, Virgin Islands case

law has consistently held that the National Labor Relations Act preempts application of the WDA to supervisors.[6]

¶ 24    As the burden of affirmatively pleading and proving that a wrongful discharge plaintiff's termination was not wrongful, but rather in compliance with at least one of the permissible grounds for discharge under the WDA, similarly United bears the burden of proving that Santiago was a supervisory employee whose claim is preempted by the NLRA. The burden of proving the applicability of the supervisory exception falls on the party asserting it. *See N.L.R.B. v. Kentucky River Cmty. Care, Inc.,* 532 U.S. 706, 711, (2001).

¶ 25    United bears the burden to establish that Santiago was a supervisor within the meaning of Section 2(11) of the NLRA, which defines the term "supervisor" to include –

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

¶ 26    The U.S. Supreme Court has held that "an employee need only perform one of the statutory supervisory functions to qualify as a supervisor." *Warner v. Kmart Corp.,* 2009 U.S. Dist. LEXIS 44502, at \*67 (D.V.I. May 27, 2009) (citing *NLRB v. Health Care & Retirement Corp. of America,* 511 U.S. 571, 573–74 (1994)). "Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held in the interest of the employer." *Id.* (citing *N.L.R.B. v. Kentucky River Cmty. Care,* 532 U.S. at 721.)

¶ 27    It is clear from the record that Santiago held the authority to assign tasks to other Plaza West deli employees. The question then to be answered is whether Santiago's authority was not of a merely routine or clerical nature but required the use of independent judgment. In *Charles v. CBI Acquisitions, LLC,* the Superior Court faced the same question and reviewed the state of the law,

---

[6] *See* ¶ 15, *supra.* Plaintiff contests that Virgin Islands law is settled that the NLRA preempts the application of the WDA to supervisors. Yet, by the reasoning of the Third Circuit, binding in this context upon the Superior Court, preemption of supervisory employees would exert significant compulsion upon employers to bargain with supervisors contrary to the national policy not to treat supervisors as employees, violating section 14(a) of the NLRA (29 U.S.C. § 164(a)). *See St. Thomas - St. John Hotel & Tourism Ass'n v. GVI,* 45 V.I. at 710.

noting that the National Labor Relations Board "has frequently warned against construing supervisory-status too broadly because an employee deemed to be a supervisor loses the protection of the Act ... Supervisory status must be established by a preponderance of the evidence ... Lack of evidence is construed against the party asserting supervisory status ... [W]henever the evidence is in conflict or otherwise inconclusive on particular indicia of supervisory authority, [the Board] will find that supervisory status has not been established ... Mere inferences or conclusionary statements, without detailed, specific evidence of independent judgment, are insufficient to establish supervisory authority ...The Board insists upon evidence sufficient to establish a finding of actual statutory authority. Job descriptions are only paper authority and are not given any controlling weight by the Board." *Charles v. CBI Acquisitions, LLC,* 2018 V.I. LEXIS 89, at *10-11 (V.I. Super. 2018) (citation and internal quotations omitted).

¶ 28    The *Charles* court determined that the plaintiff employee's decisions to assign certain housekeepers to clean certain rooms were not discretionary choices requiring the exercise of independent judgment, but rather choices "dictated by the hotel's routine cleaning needs or policy of assigning available housekeepers to rooms or areas in need of cleaning." Because "the record d[id] not reflect that the assignment of a housekeeper to a room involved an individualized assessment or a weighing of housekeepers' skill sets against the hotel's particular needs on a given day sufficient to confer the use of independent judgment necessary to establish supervisory status," the employee's claim was not deemed preempted by the NLRA.

¶ 29    Here, United concedes through is agents that Plaintiff did not have the authority to fire or hire, to conduct written employee evaluations, or to even set the prices on items in the deli department. When Santiago determined the need to reprimand an employee, she would confer with office employee Karen Quinn to review the rules and type of the warning required, then take that proposed warning to Hamed for approval. Although Santiago was titled manager, she was never trained to perform any managerial tasks, was not called manager by any deli department employee, and was treated differently from the actual Plaza West managers. Santiago was never informed of or invited to managers' meetings and, although each department was required to hold regular meetings, Santiago was never empowered to and never did call a meeting of the deli department. CSOF ¶¶ 16-30.

¶ 30    Unlike the actual Plaza West managers, Santiago was not paid a salary but rather punched a clock, earning an hourly wage that started at $5.15 in 1999 (plus time and a half for overtime),

increased through the years to $7.00 per hour when she was terminated, a rate lower than the $7.25 per hour earned by non-supervisory bakery employee Nympha James. *Id.* ¶¶ 26-28.

¶ 31    According to Plaza West co-manager Maher "Mike" Yusuf, Plaintiff's job was to "make sure there is [sic] servers, they serve the right portions, make sure they have hairnets on, make sure they come to work, make sure they follow the schedule" and monitor "when they go to break." CSOF, Exh. P, at 109-10. Even in the execution of these duties, Santiago was supervised by Hamed who testified that he regularly came around to see how things were going and make sure Plaintiff was complying with the rules. CSOF ¶¶ 4, 7.

¶ 32    Santiago's determination of who would be charged with completing what tasks in the deli department was dictated by the deli's routine needs and verbal instructions given by her supervisors. Although Plaintiff made out the department's schedule, personnel job assignments, like cook and dishwasher, were generally assigned by Plaintiff's supervisors, and their shifts were determined at the time of hiring. Plaintiff's "management" of the deli department simply consisted of plugging in and placing employees to the established routine needs of the department, and even that function required approval of Hamed. Santiago was not called upon to exercise her independent judgment to weigh each deli employee's skill sets against the department's particular needs in assigning or scheduling work.

¶ 33    Without any authority to hire, assign, discipline, or fire other employees, or the responsibility to direct them on the job in any more than a routine manner without the use of her independent judgment, it is determined that Santiago was not a supervisor as defined by the NLRA, and her claim for wrongful discharge under the Virgin Islands WDA is not preempted by the NLRA and may proceed. United's Motion will be denied as to this count.

**Defamation**

¶ 34    In Count II of the Complaint, Plaintiff alleges "slander, defamation and libel… of a nature to constitute defamation per se" in that "Defendant through employees in the course and scope of their employment made statements for others to hear," claiming that "Plaintiff had lied about what work she had finished, that she had gone to the Sion Farm store without permission, that she was a poor manager." Complaint, ¶¶ 43-45.

¶ 35    The Supreme Court has adopted the basic elements for a claim of defamation set forth in RESTATEMENT (SECOND) OF TORTS § 558. *Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566,

585-86 (V.I. 2012), affirming post-*Banks*, the Court's earlier decision in *Kendall v. Daily News Pub. Co.*, 55 V.I. 781, 787 (V.I. 2011).[7] Those elements are:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

¶ 36 Plaintiff ascribes three separate allegedly defamatory statements to United, acting through its employees: specifically, that Santiago lied about what work she had completed; that she left for the Sion Farm store without permission; and that she was a "poor" manager.

¶ 37 As to the first element, the truth or falsity of a statement is generally a question of fact for the jury, as is the question of whether a statement is defamatory. A statement or communication is only defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Joseph*, 57 V.I. at 586 (citing RESTATEMENT (SECOND) OF TORTS § 559).

¶ 38 "Under the First Amendment there is no such thing as a false idea." *Kendall*, 55 V.I. at 796 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)). "Thus, only statements that are 'provable as false' are actionable, and expressions of opinion or hyperbole, not provable as false, are constitutionally protected." *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)). The question "[w]hether an allegedly defamatory statement is one of opinion or fact is [] a question of law...." *Simpson v. Andrew L. Capdeville, P.C.*, 64 V.I. 477, 486 (V.I. 2016) (citations omitted). As such, in the first instance, the Court must determine whether the alleged defamatory statements were statements of opinion which are not actionable or statements of fact that could provide the basis for a defamation claim.

¶ 39 Here, the third allegedly defamatory statement that Santiago "was a poor manager" (Complaint ¶ 45) cannot constitute actionable defamation. That statement is an expression of a subjective opinion of one or more of the United managers which may or may not be objectively true.

---

[7] *Kendall* applied the Restatement pursuant to 1 V.I.C. § 4, prior to the Supreme Court's determination that the Legislature's adoption of 4 V.I.C. § 21 establishing the Supreme Court as the supreme judicial authority in the Virgin Islands implicitly repealed 1 V.I.C. § 4 such that courts of the Virgin Islands were able to determine the common law without automatically and mechanistically following the Restatements. *Joseph* analyzed the elements of defamation in light of its ruling in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), and applied the three non-dispositive *Banks* factors and found "no reason to depart from our decision in *Kendall* to follow the approach set forth in the Second Restatement." *Joseph*, 57 V.I. at 585-86, n.10.

As an expression of opinion, it is not provable as false or true, but is constitutionally protected and cannot survive United's Motion.

¶ 40    All the alleged statements attributed to United were made during a private conversation among United managers Hamed, Yusuf, and Boucenna. CSOF ¶ 68. The statements that Santiago lied about what work she had finished and that she left Plaza West without permission are questions of fact that would be left for the jury as to whether those statements were false and whether they were defamatory. The United managers may claim as a matter of law that the alleged published statements were privileged. Because United's pecuniary interests are affected by the truthfulness and reliability of its employees, United can claim that any statements made were conditionally privileged as relating to the interests of its business. *See* RESTATEMENT (SECOND) OF TORTS § 594(a).[8]

¶ 41    A determination concerning the potential applicability of a conditional privilege is unnecessary here for the simple but dispositive reason that Plaintiff has presented no admissible evidence that the statements at issue were ever made. In her responses to written discovery, Santiago states that she "was told by an individual that Hisham Hamed, Mike Yusuf, and Abdelkrim Boucenna were outside Plaza Extra East on the same day [she] was dismissed, laughing and talking about how they discharged [her]," but that she "do[es] not remember" the identity of the individual. SOF ¶ 49.

¶ 42    That is, Plaintiff can present no witness to testify as to the fact of and substance of the published statements of United's employees. Any attempt of Santiago herself to testify that an unknown person told her of the statements would clearly represent inadmissible hearsay. "As a general rule, inadmissible hearsay may not be used to support or defeat a motion for summary judgment." *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 132 n.9 (V.I. 2009) (citation omitted).[9]

¶ 43    Therefore, Plaintiff's defamation claim against United must fail and Defendant is entitled to summary judgment on Count II.

---

[8] "An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher…"

[9] Plaintiff argues that the statements allegedly made by Hamed, Yusuf and Boucenna are admissible as "party admission." Testimony as to what a witness heard Defendant's employees say would be admissible as party admission if the witness were available to testify and be cross-examined. Plaintiff's testimony about what an unidentified person told her that the person had heard is inadmissible hearsay not subject to any exception.

### Damages

¶ 44    On Defendant's Motion, the Court will not presently determine the scope of permissible damages that may be offered at trial. Defendant's Motion concerning the sufficiency of Plaintiff's proffered proof and the need for expert testimony are matters better adjudicated at hearing pretrial, and United's Motion will be denied without prejudice as to the issue of evidence of damages that may be permitted at trial.

In light of the foregoing, it is hereby

ORDERED that Defendant United's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Specifically, it is

ORDERED that Defendant's Motion is DENIED as to Count I and Plaintiff's claim for wrongful discharge may proceed. It is further

ORDERED that Defendant's Motion is GRANTED as to Count II, and Plaintiff's claim for defamation is dismissed with prejudice. It is further

ORDERED that, upon Plaintiff's withdrawal of her claim, Defendant's Motion is GRANTED as to Count III, and Plaintiff's claim for intentional and/or negligent infliction of emotional distress is dismissed with prejudice. It is further

ORDERED that Defendant's Motion with regard to the scope of permissible damages Plaintiff may present at trial is DENIED without prejudice. It is further

ORDERED that the parties shall meet and confer regarding the status and future course of this matter, including the advisability of referral to mediation and any prerequisites of the parties before the case is scheduled for trial; and the matter will come on for STATUS CONFERENCE via Zoom, on **February 9, 2021** at 9:00 a.m.

Dated: December 2 8, 2020.

DOUGLAS A. BRADY, JUDGE

ATTEST: TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor II

12/28/2020